HEATHER E. WILLIAMS, #122664
Federal Defender
ANDREW FRANCISCO, District of Columbia Bar No. 1619332
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700
Andrew_francisco@fd.org

Attorney for Defendant
DARAGH FINBAR HAYES

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No.  2:24-cr-00280-DJC |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) | **DEFENDANT'S REPLY TO** |
|  | ) | **GOVERNMENT'S OPPOSITION TO** |
| vs. | ) | **MOTION TO COMPEL** |
|  | ) |  |
| DARAGH FINBAR HAYES, | ) | Date:   November 15, 2024 |
|  | ) | Time:  2:00 P.M. |
| Defendant. | ) | Judge: Hon. Allison Claire |
|  | ) |  |

The government opposes the motion to compel on three principal grounds, each of which either misconstrues applicable legal standards or unjustly limits Mr. Hayes's statutory and constitutional rights. First, the government asserts that it is fully compliant with its discovery obligations under Rule 16, despite withholding critical evidence from Mr. Hayes and imposing unduly restrictive terms that undermine the defense's ability to review and challenge discoverable items effectively.[1] Second, the government argues that the defense has failed to meet its burden to establish materiality for the requested evidence, disregarding the fact that this evidence is central to the government's case-in-chief and therefore inherently material. Finally,

---

[1] The defense acknowledges the government's representation that an additional 111 pages of discovery will be produced by week's end. *See* Gov't Opp'n at 4, ECF No. 27. Counsel will make every effort to review all subsequent productions before the hearing and will notify the Court of any material changes in the defense's position.

-1-

the government asserts that it has met all *Brady* obligations, adopting an impermissibly narrow view of its duty to provide potentially exculpatory and mitigating evidence relevant to both guilt and punishment.

Through its opposition, the government effectively seeks to curtail Mr. Hayes's access to discovery, exert control over defense terminology, and sidestep procedural fairness, setting a dangerous precedent for all prosecutions in this district. In contrast, the defense's motion to compel is rooted in clear statutory and constitutional principles that protect both the identity of the referenced minor and Mr. Hayes's rights to due process and a fair trial. For these reasons, and as further detailed below, the court should grant the defense's motion to compel, ensuring that the defense has full, unimpeded access to the discovery necessary to prepare his defense.

### I. The Government's Misinterpretation of Rule 16 and the Defense's Right to Access and Copy Evidence

Rule 16 of the Federal Rules of Criminal Procedure establishes that the defense has a right not only to inspect but also:

> to *copy or photograph* books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) *the government intends to use the item in its case-in-chief at trial*; or (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). The Rule contains similar provisions for a defendant's written and recorded statements, as well as reports of examinations and tests. *See* Fed. R. Crim. P. 16(a)(1)(B), (D). Thus, Rule 16 ensures that the defense has full and effective access to materials essential for preparing a comprehensive defense, including the opportunity to test and scrutinize evidence thoroughly. The right to obtain copies is especially critical in cases where the defendant is detained and unable to review discovery independently, as is the case for Mr. Hayes. By providing only limited, in-office review of these materials, the government's proposal falls far short of the access that Rule 16 requires.

The government's "review-only" offer, limited to mere inspection at their office, fails to meet Rule 16 standards in several respects. First, a mere review does not allow the defense to conduct comprehensive analysis or subject evidence to expert examination—steps essential for testing the government's case. Without the ability to copy or photograph discovery items, the defense is hindered in its ability to challenge evidence thoroughly, to test and verify claims, or to involve necessary experts in preparing a rigorous defense. Furthermore, restricting access to government premises places an additional and undue burden on members of the defense team, forcing them to conduct their review in a setting that restricts time, resources, and collaboration—all of which are crucial for effective preparation. This approach conflicts directly with Rule 16's intent, which prioritizes meaningful access and equality in the adversarial process, not selective and restricted review at the government's discretion.

Moreover, the government's argument that the defense must establish materiality to gain access to this evidence misinterprets the rule's standards, which expressly compel the government to produce evidence that it intends to use in its case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(E)(ii). Accordingly, for such evidence, Rule 16 presumes materiality, as this evidence is inherently relevant to the charges and essential for the defense to assess, challenge, and counter the government's assertions. Unlike the circumstances in *United States v. Mandel*, 914 F.2d 1215 (9th Cir. 1990), *United States v. Liquid Sugars, Inc.*, 158 F.R.D. 466, 471 (E.D. Cal. 1994), and *United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009), where the defense sought additional discovery items not central to the prosecution's case-in-chief, the materials requested here are essential for proving the government's own allegations and meeting the elements of the charged offense. Here, the defense is not seeking ancillary materials, nor is it requesting discovery purely to develop an alternative defense strategy. Rather, it seeks access to basic, foundational discovery that directly bears on the prosecution's ability to prove elements of the

offense—evidence the government itself intends to rely upon in its case-in-chief. Consequently, the government's reliance on these cases to argue materiality is misplaced.

Additionally, the government's own representations in its Complaint and Opposition establish the materiality of this evidence. In these filings, the government references specific communications, devices, and alleged admissions directly tied to elements of the offense under 18 U.S.C. § 2251(a). For instance, the Complaint describes alleged conversations between Mr. Hayes and an undercover agent regarding intent to produce a depiction of sexually explicit conduct, as well as the seizure of "a number of items of evidentiary value," including cameras and other electronic devices. Compl. ¶¶ 5–10, 12, ECF No. 1; *see also* Gov't Opp'n at 4, ECF No. 27 ("The material made available [at the U.S. Attorney's Office] concerning the child victim consists of approximately 116 pages or items, including the defendant's recorded interview, the search warrant documents, and the defendant's communications with an undercover employee."[2]). Given the government's stated reliance on this evidence to support its allegations against Mr. Hayes, its materiality is already clear, rendering any further demonstration from the defense unnecessary. By creating an artificial barrier to access, the government misinterprets Rule 16's foundational guarantee of fair and open discovery for all parties.

The government similarly misapplies 18 U.S.C. §§ 3509(d) and 3509(m) to support their restrictive approach to discovery production. Section 3509(m) governs the handling of child sexual abuse material (CSAM), limiting duplication to prevent further dissemination. However, the defense's request does not pertain to CSAM materials but rather to essential non-CSAM evidence, such as communications and other items needed to assess the government's claims.

---

[2] It bears emphasizing that none of the items comprising the referenced 873-page production are directly incriminating or sufficient to prove any elements of § 2251. These items include, for example, 825 photographs of Mr. Hayes's residence and belongings, with the remainder consisting of mugshots, DMV information, and publicly accessible LinkedIn data.

Any CSAM evidence in this case, while certainly crucial, satisfies only a single element of § 2251. As such, the government's use of § 3509(m) as a catch-all justification to restrict discovery access lacks a statutory basis and denies the defense access to fundamental materials critical to Mr. Hayes's defense.

Similarly, § 3509(d) protects the privacy of minor victims without infringing on due process rights.[3] The defense has consistently complied with § 3509(d) requirements, demonstrating due regard for privacy protections while seeking access only to materials necessary for preparing a fair defense. The government's broad interpretation of § 3509(d), however, attempts to use privacy protections as a means to impose unnecessary restrictions on discovery, thus undermining the balance Congress intended between victim privacy and the accused's right to a fair trial.

Finally, the government's implication that discovery restrictions are permissible because the case is "approximately 41 days old" minimizes Mr. Hayes's statutory and constitutional rights. *See* Gov't Opp'n at 4, ECF No. 27. Access to discovery is essential from the beginning stages of a case, particularly for defendants who are detained and unable to conduct independent reviews. For this reason, the Local Rules compel the government to produce discovery within 14 days of arraignment, upon the defendant's request. *See* E.D. Cal. Local Rule 440(a). This request has been duly made. The defense's need for discovery is as critical on day one as it is months into a case, and the government's attempt to justify the delay here based on the case's early stage

---

[3] When enacted, as contemplated by the legislators who enacted it, § 3509(d)'s target was prohibiting the disclosure of a minor's name and address. *See United States v. Broussard*, 767 F. Supp. 1536, 1542 (D. Or. 1991) ("The legislative history, although scant, is helpful. In describing the confidentiality provision, Congressman DeWine explained that the '[b]ill makes it easier for a child to testify in court . . . it forbids the release of the witness's name and address.' H.R. 8754, October 3, 1990. *See also* Congressional and Administrative News, 101st Cong. 2nd Sess., P.L. 101–647 (Special procedures include privacy and address protection to protect child witnesses by restricting the public release of any information identifying the child witness)").

-5-

fails to consider the practical and procedural impact of withholding evidence.

**II. The Government's *Brady* Obligations and the Importance of Mitigating Evidence**

The government's *Brady* obligations extend beyond strictly exculpatory evidence to include any material that may mitigate the defendant's culpability or influence sentencing. The Supreme Court's ruling in *Brady v. Maryland*, 373 U.S. 83 (1963), and subsequent cases have firmly established that the prosecution must produce not only evidence that tends to negate guilt but also any material evidence that could reduce the severity of the charges or sentencing outcomes. *See United States v. Bagley*, 473 U.S. 667, 676 (1985) (explaining that *Brady* applies to all evidence favorable to the defense that is material either to guilt or to punishment); *Giglio v. United States*, 405 U.S. 150, 154 (1972) (extending *Brady* to evidence affecting witness credibility when relevant to sentencing considerations); *see also Cone v. Bell*, 556 U.S. 449, 475 (2009) ("Evidence that is material to guilt will often be material for sentencing purposes as well . . . ."); *Sivak v. Hardison*, 658 F.3d 898, 912 (9th Cir. 2011) ("If *Brady* . . . violations were prejudicial with respect to either the guilt or penalty phase of the trial, Sivak is entitled to relief."). This disclosure requirement is fundamental to due process and ensures the defense has access to all information that may support a fair and balanced resolution.

In this case, the government's opposition narrowly interprets *Brady* obligations, dismissing any potential mitigating information within the restricted materials. The government implies that its burden ends with producing evidence deemed directly exculpatory, overlooking its duty to disclose evidence that may offer context, diminish culpability, or otherwise impact sentencing. Such an approach contravenes *Brady's* intent, which is to ensure the defense receives comprehensive access to any information that could materially affect trial or sentencing.

For example, the Complaint indicates that Mr. Hayes voluntarily provided agents with passwords and passcodes, facilitating law enforcement's ability to investigate his alleged conduct

and to identify other potential suspects. *See* Compl. ¶¶ 5 n.1, 15(a), ECF No. 1. This cooperation is significant under the sentencing guidelines and, *inter alia*, may support a departure under § 5K1.1. A defendant's assistance in broader investigations is a recognized basis for mitigation, and Mr. Hayes's proactive cooperation with law enforcement should be fully accessible to the defense to argue for leniency, should that need arise. Limiting access to this material denies Mr. Hayes the ability to substantiate his cooperation and its potential impact on sentencing.

Moreover, the government's own filings reveal statements by Mr. Hayes that may carry mitigating weight. The Complaint, for instance, notes that Mr. Hayes allegedly stated he "never masturbated to any of the videos," *Id.* ¶ 15(f), which could be relevant to a psychological evaluation indicating a low risk of recidivism. Such statements, particularly when coupled with expert evaluation, could support an argument that Mr. Hayes poses a minimal risk to society, directly affecting the sentencing considerations. However, without unimpeded access to the recorded statements and related evidence, the defense cannot evaluate the statements' context or explore mitigating interpretations fully.

Furthermore, the government's stance that *Brady* does not compel disclosure of certain materials because they are "incriminating" misrepresents *Brady's* intent. Even materials that appear incriminating may carry exculpatory or mitigating information when assessed in their entirety. *See United States v. Bagley*, 473 U.S. 667, 675 n.7 (1985). The Ninth Circuit has consistently recognized the importance of disclosure for any material relevant to sentencing or the defendant's broader character, particularly when such evidence can inform the court's view of culpability and risk. *See, e.g., United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) (applying *Brady* to material evidence relevant to sentencing when there is a reasonable probability it would affect sentencing outcomes); *see also Kyles v. Whitley*, 514 U.S. 419, 433 (1995) ("*Bagley* held that regardless of request, favorable evidence is material, and constitutional

error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" (quoting *Bagley*, 473 U.S. at 682)). Accordingly, because *Brady* and its progeny require the government to disclose evidence that could impact sentencing, allowing the prosecution to limit its *Brady* obligations to only that which it unilaterally deems non-incriminating undercuts the defense's ability to assess evidence independently and prepare a comprehensive defense.

### III. The Government's Demand for Restrictive Language as an Unprecedented Overreach

Ultimately, the defense's motion is before the Court because the government has conditioned its production of discovery on the defense's agreement to adopt the government's preferred terminology in describing the minor child identified in the Complaint. This insistence on the defense using prosecution-preferred language represents an unprecedented overreach, unsupported by law. The defense's request to use neutral terms, such as "Identified Minor," "Minor Subject," or "Referenced Minor," is intended to preserve the presumption of innocence and maintain impartiality in court proceedings. These terms also preserve the minor's identity. No legal basis exists for the government to dictate the language the defense must use, nor is there precedent for conditioning a defendant's access to discovery on the defense's compliance with prosecution-imposed terminology.[4]

This demand is particularly troubling given the adversarial nature of criminal

---

[4] The government's reliance on prior "Project Safe Childhood" cases with similar protective stipulations does not diminish the defense's objections to this language or make these stipulations legally binding or even persuasive. *See* Gov't Opp'n at 3. A pattern of using prejudicial language does not establish its legality or constitutionality, nor does it negate the defendant's statutory and constitutional rights. To the extent that other cases have incorporated such stipulations, the defense would contend this matter is especially ripe for review. By asserting the right to neutral language, the defense here prioritizes the client's right to a fair trial over expedient or conventional practices that risk prejudicing the factfinder and compromising the adversarial process.

proceedings. In our system, the defense and prosecution are opposing parties; the defense is under no obligation to adopt the language or characterizations preferred by the government. Requiring the defense to use terms like "victim" or "child victim" in a case where Mr. Hayes has not been convicted and the presumption of innocence remains would risk prejudicing the proceedings and casting Mr. Hayes in a negative light before any adjudication of guilt. The Court should ensure that the defense is not compelled to use language suggesting an assumption of guilt, as doing so would undermine fairness and due process.

Furthermore, the Clerk of Court's intervention to restrict public access to defense filings at the government's request, without statutory authority, is similarly concerning. This action appears as an extension of the government's efforts to control how the defense may present its case. Such intervention disrupts the transparency of the court process and raises concerns about prosecutorial influence over procedures that should remain neutral. Local Rule 140(e) explicitly prohibits the Clerk of Court from "sua sponte sealing or redacting" court filings without a court order, underscoring that any restriction on access requires judicial authorization—not unilateral action by the Clerk, even in the presence of good cause.[5] *See* E.D. Cal. Local Rule 140(e). The Clerk's intervention here, taken solely at the government's request and without any statutory or judicial directive, not only contravenes the Local Rules but also raises serious concerns about

---

[5] Here, good cause was wholly absent. The Ninth Circuit has consistently used neutral and descriptive terms similar to those that the defense employed, including terms describing a defendant's relationship to the minor, as well as the minor's gender, age, and initials, in prosecutions under 18 U.S.C. § 2251, without violating privacy protections. For example, in *United States v. Boam*, 69 F.4th 601 (9th Cir. 2023), the court referred to the minor as the defendant's "fourteen-year-old stepdaughter." Similarly, in *United States v. Mendez*, 35 F.4th 1219 (9th Cir. 2022), the court referenced the minor as the "fourteen-year-old daughter" of the defendant's girlfriend. These cases and others, such as *United States v. Overton*, 573 F.3d 679 (9th Cir. 2009) (defendant's "stepdaughter"); *United States v. Evans-Martinez*, 530 F.3d 1164 (9th Cir. 2008) (defendant's "oldest daughter"); *United States v. Williamson*, 439 F.3d 1125 (9th Cir. 2006) (defendant's "granddaughter"); and *United States v. Wright*, 373 F.3d 935 (9th Cir. 2004) (defendant's "11-month-old son"), demonstrate that using standard relational terms, gender references, a minor's age, and initials is common practice, does not compromise privacy, and does not conflict with any federal statute.

neutrality and prosecutorial influence in procedural administration.

In sum, conditioning discovery access on the acceptance of prosecution-imposed language has no place in our legal system, which is founded on principles of equality, impartiality, and fair process, and allowing the government to control defense terminology in this manner risks setting a dangerous precedent, effectively granting the prosecution undue power to influence the defense's strategy and public presentation. Such action erodes the fundamental fairness of the adversarial process, creating a standard where the defense's ability to present its case hinges on compliance with the government's demands.

For these reasons, the Court should grant the defense's motion to compel and reject the government's restrictive language requirements, thereby affirming the defendant's right to a fair and impartial process.

November 14, 2024

HEATHER E. WILLIAMS
Federal Defender

/s/*ANDREW FRANCISCO*
ANDREW FRANCISCO
Assistant Federal Defender
Attorney for Defendant
DARAGH FINBAR HAYES