1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, | Case No. 2:24-cr-0280-DJC |
| Plaintiff, | |
| v. | **ORDER** |
| DARAGH FINBAR HAYES, | (ECF Nos. 32, 37, 41, 50, 51) |
| Defendant. | |

On December 16, 2024, the Court issued an Order to Show Cause Why Sanctions or Other Appropriate Disciplinary Action Should Not Issue Against Assistant Federal Defender Andrew Francisco, counsel for Defendant Daragh Finbar Hayes. (ECF No. 50.) On December 18, 2024, Mr. Francisco timely filed his response to the Order to Show Cause. (ECF No. 51.) After careful consideration and review, the Court issues the following order sanctioning Mr. Francisco.

I.    **BACKGROUND**

On October 10, 2024, Defendant Hayes was charged by indictment with a one count violation of 18 U.S.C. § 2251(a) and (e), sexual exploitation of a minor. *United States v. Hayes*, No. 2:24-cr-0280 (E.D. Cal.), Indictment (ECF No. 9) (filed Oct. 10,

/ / /

/ / /

1

1   2024).[1]

2       On October 25, 2024, Mr. Francisco filed a written motion to compel, which was

3   initially filed under seal and then subsequently ordered to be filed unsealed with narrow

4   redactions. Def. Mot. Compel (Sealed, ECF No. 16); 10/30/2024 Order (ECF No. 24);

5   Def. Am. Mot. Compel (Unsealed and redacted, ECF No. 25). On November 15, 2024, a

6   hearing was held on Defendant's motion to compel before Magistrate Judge Allison

7   Claire, and Judge Claire denied Defendant's motion to compel without prejudice.

8   11/15/2024 Minutes (ECF No. 30).

9       On November 21, 2024, Mr. Francisco filed a written motion to unseal the motion

10  to compel filed at ECF No. 16, in which he stated the following:

11          Legislative history supports this narrower interpretation. In *United
12      States v. Harris*, the court observed that the statute was designed to
        prevent the disclosure of specific identifying details, such as "names and
13      addresses," rather than general descriptors. 761 F. Supp. 409, 414
        (D.D.C. 1991) (citing Congressman DeWine's remarks during the statute's
14      enactment).  …

15          The legislative history of § 3509(d) supports this interpretation. In
16      *United States v. Harris*, the court examined the statute's background,
        citing Congressman DeWine's remarks that emphasized preventing the
17      disclosure of names and addresses of child victims or witnesses. 761 F.
        Supp. At 414. This focus indicates that Congress aimed to shield specific
18      identifying information, not to impose broad restrictions on all descriptive
        terms. *Id*. ("The legislative history indicates that Congress intended to
19      shield the names and addresses of child victims and witnesses from public
20      disclosure.").

21          The district court's analysis in *Harris* is consistent with the common
22      practice of using initials in court filings involving minors. Federal Rule of
        Criminal Procedure 49.1(a)(3) permits the use of a minor's initials in court
23      documents to protect their identity.

24  Def. Mot. Unseal at 6, 10 (presenting argument regarding 18 U.S.C. § 3509(d)) (ECF No.

25  _____

26  [1]  On December 19, 2024, a superseding indictment was filed charging Mr. Hayes with
    two counts of violating 18 U.S.C. § 2251(a) and (e), attempted sexual exploitation of a
27  minor; three counts of violating 18 U.S.C. § 2251(a) and (e), sexual exploitation of a
    minor; and one count of violating 18 U.S.C. § 2252(a)(2), distribution of a minor
28  engaging in sexually explicit conduct. (ECF No. 53.)

1    32).

2        On December 2, 2024, the government filed a written opposition to Defendant's

3    motion to unseal, raising the following argument:

4

5        Defense counsel repeatedly cites, and purportedly quotes, "*United States v. Harris*" at "761 F. Supp. 409 [] (D.D.C. 1991)" in support of his

6    assertion that ECF 16 should not be restricted. ECF 32 at pg. 6, 10. The case at 761 F.Supp.409 does not stand for the proposition that defense

7    counsel claims. In fact, that case is *Harris v. Murray*, a 1990 decision out of the Eastern District of Virginia which affirms the granting of a motion for

8    summary judgment on an inmate's Section 1983 lawsuit. This cited case does not contain any of the information claimed in defense counsel's brief.

9    The government attempted to locate the *Harris* case defense cites in its brief but was unable to find anything. For example, when the government

10    searched the quote included on page 10 of the defense motion, allegedly from the *Harris* case, it returned 0 results on Westlaw and on Lexis.

11

12    U.S. Opp. at 4-5 (ECF No. 36).

13        On December 5, 2024, Mr. Francisco filed a written reply to the government's

14    opposition, responding to the argument regarding *United States v. Harris* as follows:

15

16        Defense counsel acknowledges the government's observation that *United States v. Harris* does not discuss the legislative history of

17    18 U.S.C. § 3509(d) and clarifies that *United States v. Broussard*, 767 F. Supp. 1536, 1542 (D. Or. 1991), is the district court case from which this

18    material is quoted. This inadvertent citation error does not affect the substance of the defense's position that the legislative history supports a

19    far narrower interpretation of § 3509(d) than the government asserts.

20    Def. Reply at 8 n.3 (ECF No. 37).

21        On December 9, 2024, this Court held a hearing on Defendant's motion to unseal

22    with Mr. Francisco appearing for Defendant and Assistant United States Attorney

23    Christina McCall appearing for the government. (ECF No. 41.) At that hearing, the Court

24    asked Mr. Francisco to explain his citation and quotation of "*United States v. Harris*, 761

25    F. Supp. 409, 414 (D.D.C. 1991)" in his motion to unseal and in his reply responding to

26    the government's argument regarding "*United States v. Harris*, 761 F. Supp. 409, 414

27    / / /

28    / / /

1  (D.D.C. 1991)." The following exchange occurred at the December 9, 2024 hearing:[2]

2         **THE COURT**:     Good afternoon. The Court has carefully
3  reviewed the briefing that's been submitted. We're here for Defendant's motion to unseal, which is at ECF Number 32.

4
5         I have specific issues and questions I want to address. The first issue that I want to address is that in the Government's opposition, the
6  Government points out that a case that the Defense cited at least twice in its motion to unseal at page 6 and 10, *United States v. Harris*, 761 F.
7  Supp. 409, 414 (District of D.C. 1991), that that case does not exist. The Defense response to this in Footnote 3 of its reply was "Defense
8  counsel acknowledges the Government's observation that *United States v. Harris* does not discuss the legislative history of 18 United States Code,
9  Section 3509(d), and clarifies that *United States v. Broussard*, 767 F. Supp. 1536 at 1542 (District of Oregon 1991), is the district court case
10  from which this material is quoted. This inadvertent citation error does not affect the substance of the Defense's position that the legislative history
11  supports a far narrower interpretation of Section 3509(d) than the
12  Government asserts."

13         So here's the question I have. In the Defense motion on page 10,
14  the case that's cited, *United States v. Harris*, it's cited for this sentence -- and this is on page 10 of the motion: "The legislative history indicates that
15  Congress intended to shield the names and addresses of child victims and witnesses from public disclosure."

16
17         And then in the Defense reply, it states that the correct case from which this material is quoted is the *Broussard* case. Where is this quoted
18  language in the *Broussard* case?

19         **MR. FRANCISCO**:  Your Honor, I believe that material is on page
20  1542.

21         **THE COURT**:     Okay. I'm going to hand you a copy of that case because I've actually read it, and I don't see it anywhere on that
22  case. So I'm going to give you a moment to take a look and see if there's something I'm missing. I'm going to ask the Government if you need a
23  copy of *Broussard* as well?

24         **MS. McCALL**:     Thank you, Your Honor.

25

26  [2]  Based on the Court's denial of Defendant's motion to unseal (ECF Nos. 32, 41), the Court sealed portions of the audio recording and transcript from the December 9, 2024
27  hearing that identified the minor victim's gender. The sealed portions are not at issue here, and are not referenced in this order. The redacted transcript of the December 9,
28  2024 hearing is available at ECF No. 48.

1    **(Counsel reviewing case.)**

2    **MR. FRANCISCO**:  My apologies, Your Honor. There are two

3    *Broussard* opinions that were filed in short succession in 1991 that were
dealing with the recently-passed Section 3509 – what now has become

4    Section 3509. I'm not seeing this particular quote in the copy that the
Court has presented.

5

6    **THE COURT**:        So the copy that I presented is the one that's
cited in the reply brief at 767 F. Supp. 1536, 1542 (District of Oregon

7    1991). The Court also read the second *Broussard* case. That sentence
that is quoted in the Defense brief is not in either case.

8

9    I also did a similar search that the Government referenced in its
opposition, which is I searched for that quotation and did not find it

10   anywhere in any case, not just the *Broussard* case that the Defense cites
or in the second *Broussard* case that the Defense did not cite but that the

11   Court found.

12   *Broussard* has a very different sentence in it, and that is, "The

13   legislative history indicates that Congress was concerned about the
increase in child abuse cases nationwide, and in particular, statistics

14   revealing a high incidence of child abuse on Indian reservations." This is
at 767 F. Supp. 1536 -- I'm sorry -- at page 1539.

15

16   So here's my question. I want to try to understand how the
Defendant's response in Footnote 3 of its reply, how it's an inadvertent

17   citation error. It appears to the Court to be a hallucinated or a fictitious
case. The case name is not correct. It's not *United States v. Harris*. The

18   case citation is not correct. The district court identified is not correct. It's
not the District of D.C. And the year is not correct. So I want to try to

19   understand how it's an inadvertent citation and how the Defense states
that that quoted language comes from *Broussard*.

20

21   **MR. FRANCISCO**:  Certainly -- certainly, Your Honor, and my
apologies for the confusion. I think at the outset, Your Honor, *Broussard*

22   and the inadvertent citation to *Harris* were for district court cases. They
were proposed in this motion to highlight the -- the persuasive value of the

23   legislative history. And I -- I sincerely apologize for the lack of attention to
those citations. However, I'd submit that the substance absolutely

24   supports the Defense position. And the reference to *Broussard* was
merely for a shorthand reference to the legislative history.

25

26   **THE COURT**:        So *Broussard* does talk about the legislative
history at that section and states, "What little legislative history exists

27   indicates that the sole purpose of this statute was to provide the district
courts with tools to make a child's experience with the criminal justice

28   system less traumatic and to limit the child's exposure to the public."

There's also a reference later saying, "The legislative history, although scant, is helpful in describing the confidentiality provision. Congressman DeWine explained that the bill makes it easier for a child to testify in court. It forbids the release of the witness's name and address." It doesn't appear that *Broussard* actually supports the Defense argument, but the Court is also concerned that it appears that the actual citation in the Defense filing appears to be a fictitious case.

But you're saying there is actually a *United States v. Harris* case?

**MR. FRANCISCO**:  Well, there is a *United States v. Harris* case, Your Honor. The *Harris* case, I -- the Defense agrees with the Government that the *Harris* case does not support the position regarding legislative history.

**THE COURT**:        Are you talking about the *Harris* case that the Government identified, which is a civil case -- *Harris v. Murray* at 761 F. Supp. 409 (Eastern District of Virginia 1990)?

**MR. FRANCISCO**:  No, Your Honor. There are – there are many *United States v. Harris*'s cases. I myself recently had one. And –

**THE COURT**:        I'm sorry. So, Mr. Francisco, are you saying there's a different *United States v. Harris* case that deals with this specific statutory provision? So you probably are getting that the Court is concerned that there was a citation to a hallucination, like a case that's not actually real. It has the markings of a real case because it has a case name and an F. Supp. and a district court, but all of those are inaccurate here.

**MR. FRANCISCO**:  But, Your Honor, the substance is accurate and the substance was what I had directed the Court's attention to in my initial filing. And I do apologize for the citation error, Your Honor, the misquote. The -- that material never should have been quoted, I will concede. I would -- I would also add that that material does not require a quotation. There's nothing authoritative that the quote lends to the Court's consideration. Again, Your Honor, it is a direction to review the legislative history which is what I had hoped the Government and the Court would consider in this case, specifically Congressman DeWine's remarks.

**THE COURT**:        Okay. Let me turn to the Government to see if they have any response.

**MS. McCALL**:        Your Honor, we share the Court's concern about citing and quoting in multiple places in the brief something that doesn't exist. And even the *Broussard* case doesn't stand for the proposition that the Defense is arguing.

6

So with that, we'd submit. I mean, of course "Harris" is a common last name, but inventing a case, inventing a citation, and inventing a quote is I think more than inadvertence.

**THE COURT**:     So -- but -- the Court agrees. I don't -- I don't understand how this could happen. It's – inadvertent citation errors are things like the wrong page is cited or something like that. Here, every part of the citation is incorrect. And then the case that's identified as being the correct case in the Defense reply in Footnote 3, that is also not correct, and the quoted language doesn't appear in there and *Broussard* doesn't actually -- I read the whole case. I saw the second case as well. It doesn't stand for the propositions that the Defense argues and the quoted language is different, so that is very concerning to the Court.

It's even more concerning because the issue was raised in the opposition which specifically stated the case is not correct. The quoted language is not there. The quoted language -- I searched for it -- is not found in any case. And the Defense's response to that does not appear to be accurate and it appears to be misleading and that is very concerning to the Court.

So let me turn now –

**MR. FRANCISCO**:   If I may briefly, Your Honor, --

**THE COURT**:     Yes, briefly.

**MR. FRANCISCO**:   -- for the record? In drafting my reply to the Government's opposition, counsel for the Defense'[s] intention was to redirect the discussion to the legislative history. In the main body of the text, counsel for the Defense provided the citation with the legislative history which I submit, Your Honor, is in accord with the original filing, the opening brief in this case, ECF 37 at page 8, the second paragraph, where the Defense states that "The legislative history further supports the Defense's interpretation of 3509(d)," which is that the Defense interpretation is far narrower than the Government's. And specifically it was the portion from *Broussard* discussing names and addresses as quoted on the House floor by the member from Ohio, Congressman DeWine.

The Defense counsel sincerely apologizes for the confusion and the poor attempt at remedying the issue, Your Honor.

**THE COURT**:     So I understand the Defense argument, but are you acknowledging and agreeing that the case cited in your opening brief on pages 6 and 10, that that is not a real case and that the language quoted is not actually in *Broussard*?

**MR. FRANCISCO**:  Your Honor, I concede that the citation in the Defense's opening brief does not contain reference to 3509(d) or legislative history.

**THE COURT**:      Okay.

**MR. FRANCISCO**:  That was -- that was cited in error, Your Honor.

**THE COURT**:      Okay. And do you also concede that it is not a real case -- what you cited?

**MR. FRANCISCO**:  Your Honor, I can't speak to that. I can speak to that it was cited in error.

**THE COURT**:      Okay. So let's turn to some other issues. Let me think on this more. Because I think if you put in that citation, you will see that it is not a real case, so let me think more about that response.

12/9/2024 Hearing on Defendant's Motion to Unseal, Transcript at 2:14 - 9:20 (ECF No. 48).

At the December 9 hearing, the Court denied Defendant's motion to unseal on multiple grounds. The Court concluded that the motion was an improper motion to reconsider, raising arguments previously raised, considered, and denied by Judge Claire. 12/9/2024 Hrg. Tr. 9:21-11:10 (reviewing Def. Mot. to Compel and Reply (ECF Nos. 25, 29); 10/28/2024 Minute Order (denying without prejudice Defendant's request to seal in entirety ECF No. 16) (ECF No. 19); and 10/30/2024 Order (ordering Defendant to file a redacted version of his motion to compel that redacted the following from ECF No. 16:  "all references to Child Victim 1's gender, including pronouns, and references to Child Victim 1's relationship to defendant, including but not limited to references at ECF No. 16 at pp. 1:25 and 10:12 and ECF No. 16-3 at pp. 1 (final paragraph) and 4 (final paragraph).") (ECF No. 24)). The Court also rejected Defendant's arguments regarding the stipulated protective order that both Defendant and the government signed and submitted to the Court, and which the Court entered on November 25, 2024. 12/9/2024 Hrg. Tr.11:11-18:18 (reviewing Stip. Prot. Order (ECF No. 35) and authority cited by

1  Defendant). Defendant conceded that the stipulated protective order would require

2  redacting the relationship identification language that Defendant now sought to unseal,

3  and further conceded that the cases cited for his arguments regarding retroactivity did

4  not address protective orders. *Id*. at 11:25-12:7, 14:11-15. The Court also noted that any

5  delay in providing public access to the redacted version of Defendant's filings was due to

6  defense counsel's delay in complying with Judge Claire's order. *Id*. at 19:17-20:6.

7       The Court also firmly rejected the defense arguments that "the Clerk of Court's

8  conduct was improper and that the prosecution improperly influenced court staff." *Id*. at

9  20:7-11; *see id.* at 20:7-23:18. The Court concluded that the Clerk of Court's actions to

10  temporarily seal a document that a party has identified as containing information that

11  must be sealed, while the sealing issue could be addressed by the parties and the court,

12  was proper and the correct course of conduct. *Id*. at 21:2-23:18. The Court further

13  concluded that Defendant's arguments regarding Local Rule 140(e) were incorrect,

14  "demonstrat[ing] a misunderstanding of that Local Rule," and in this case, would have

15  revealed the identity of the child victim, causing potential harm to the child. *Id*. at 21:2-

16  23:18.

17       Finally, the Court firmly rejected Defendant's accusations that the "Clerk acted as

18  an agent for the prosecution" in temporarily sealing Defendant's motion to compel—

19  conduct which the Court has already found was proper and the correct course of

20  conduct— as lacking merit, as inflammatory, and for "undermin[ing] the integrity of the

21  court system." *Id*. at 23:19-27:7.

22       Almost one week later, on Sunday, December 15, 2024 at 8:54 p.m., Defendant

23  filed a "Notice of Errata: Docket 32: Notice of Motion; Motion to Unseal ECF No. 16 and

24  Docket 37: Reply to Government's Opposition to Motion to Unseal ECF No. 16." (ECF

25  No. 47.) This Notice of Errata was submitted by Federal Defender Heather Williams[3] and

---

26  [3]  The Court does not issue this sanctions order lightly, and emphasizes that there has

27  been no indication or suggestion that any other individual from the Federal Defender's
   Office was involved in or responsible for the conduct at issue besides Mr. Francisco

28  himself.

1    Mr. Francisco, addressing "the misstatements, erroneous citations, and unsupported

2    quotations contained within these filings, and any oral arguments based on them, and

3    seeks to clarify the record to ensure accuracy and integrity in these proceedings." *Id*. at

4    1.

5          On Monday, December 16, 2024 morning, the Court issued its Order to Show

6    Cause ("OSC"). (ECF No. 50.) Mr. Francisco timely filed his response to the Order to

7    Show Cause on December 18, 2024. (ECF No. 51.)

8    **II.    LEGAL STANDARDS**

9          "Within the federal system, each district court is authorized to govern and

10    discipline its own bar." *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir.

11    1999). The district court may issue sanctions for violating its local rules, and also under

12    its inherent authority. *See Fink v. Gomez*, 239 F.3d 989, 991-92 (9th Cir. 2001);

13    *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989). Before imposing

14    sanctions on an attorney, the court must provide the attorney with notice and an

15    opportunity to be heard. *Weissman*, 179 F.3d at 1198.  A separate sanctions hearing is

16    not required when the attorney is given the opportunity to respond in writing. *Pac. Harbor*

17    *Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). "The

18    opportunity to brief the issue fully satisfies due process requirements." *Id*. (citing

19    *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir.1995); *Toombs v. Leone*,

20    777 F.2d 465, 472 (9th Cir.1985)).

21          "Broad deference is given to a district court's interpretation of its local rules." *Bias*

22    *v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007) (citing *Christian v. Mattel, Inc.*, 286

23    F.3d 1118, 1129 (9th Cir. 2002)). United States District Court for the Eastern District of

24    California Local Rule 110 provides: "Failure of counsel or of a party to comply with these

25    Rules or with any order of the Court may be grounds for imposition by the Court of any

26    and all sanctions authorized by statute or Rule or within the inherent power of the Court."

27          Local Rule 180(e) provides: "Standards of Professional Conduct. Every member

28    of the Bar of this Court, and any attorney permitted to practice in this Court under (b),

shall become familiar with and comply with the standards of professional conduct

required of members of the State Bar of California and contained in the State Bar Act,

the Rules of Professional Conduct of the State Bar of California, and court decisions

applicable thereto, which are hereby adopted as standards of professional conduct in

this Court. In the absence of an applicable standard therein, the Model Rules of

Professional Conduct of the American Bar Association may be considered guidance. No

attorney admitted to practice before this Court shall engage in any conduct that

degrades or impugns the integrity of the Court or in any manner interferes with the

administration of justice."

Rule 3.3 of the Rules of Professional Conduct of the State Bar of California

requires candor to the tribunal. Rule 3.3(a)(1) provides that a lawyer shall not: "knowingly

make a false statement of fact or law to a tribunal or fail to correct a false statement of

material fact or law previously made to the tribunal by the lawyer." Rule 3.3(a)(2)

provides that a lawyer shall not "fail to disclose to the tribunal legal authority in the

controlling jurisdiction known to the lawyer to be directly adverse to the position of the

client and not disclosed by opposing counsel, or knowingly misquote to a tribunal the

language of a book, statute, decision or other authority." Rule 3.3(a) "appl[ies] to all

lawyers, including defense counsel in criminal cases." Cal. Rules of Pro. Conduct r. 3.3

cmt. 4 (State Bar of Cal. 2023). Rule 3.1(a)(2) provides that a lawyer shall not "present a

claim or defense in litigation that is not warranted under existing law, unless it can be

supported by a good faith argument for an extension, modification, or reversal of the

existing law."

Eastern District of California Local Rule 184(a) provides: "Discipline. In the event

any attorney subject to these Rules engages in conduct that may warrant discipline or

other sanctions, any Judge or Magistrate Judge may initiate proceedings for contempt

under 18 U.S.C. § 401 or Fed. R. Crim. P. 42, or may, after reasonable notice and

opportunity to show cause to the contrary, take any other appropriate disciplinary action

against the attorney. In addition to or in lieu of the foregoing, the Judge or Magistrate

1    Judge may refer the matter to the disciplinary body of any Court before which the

2    attorney has been admitted to practice."

3    **III.    DISCUSSION**

4         "Many harms flow from the submission of fake opinions. The opposing party

5    wastes time and money in exposing the deception. The Court's time is taken from other

6    important endeavors. The client may be deprived of arguments based on authentic

7    judicial precedents. There is potential harm to the reputation of judges and courts whose

8    names are falsely invoked as authors of the bogus opinions and to the reputation of a

9    party attributed with fictional conduct. It promotes cynicism about the legal profession

10   and the American judicial system. And a future litigant may be tempted to defy a judicial

11   ruling by disingenuously claiming doubt about its authenticity." *Mata v. Avianca, Inc.*, 678

12   F. Supp. 3d 443, 448-49 (S.D.N.Y. 2023) (internal footnote omitted).

13        Submitting fictitious cases and quotations to the court "degrades or impugns the

14   integrity of the Court" and "interferes with the administration of justice" in violation of

15   Local Rule 180(e), and violates California Rules of Professional Conduct 3.1(a)(2),

16   3.3(a)(1), and 3.3(a)(2). *See* E.D. Cal. L.R. 180(e) (requiring compliance with the

17   California Rules of Professional Conduct); Cal. Rules of Pro. Conduct r. 3.3(a)(1) (lawyer

18   shall not "knowingly make a false statement of fact or law to a tribunal or fail to correct a

19   false statement of material fact or law previously made to the tribunal by the lawyer");

20   Cal. Rules of Pro. Conduct r. 3.3(a)(2) (lawyer shall not "knowingly misquote to a tribunal

21   the language of a book, statute, decision or other authority"); Cal. Rules of Pro. Conduct

22   r. 3.1(a)(2) (lawyer shall not "present a claim or defense in litigation that is not warranted

23   under existing law, unless it can be supported by a good faith argument for an extension,

24   modification, or reversal of the existing law."). "A fake opinion is not 'existing law' and

25   citation to a fake opinion does not provide a non-frivolous ground for extending,

26   modifying, or reversing existing law, or for establishing new law. An attempt to persuade

27   a court or oppose an adversary by relying on fake opinions is an abuse of the adversary

28   system." *Mata*, 678 F. Supp. 3d at 461 (citing *Salovaara v. Eckert*, 222 F.3d 19, 34 (2d

Cir. 2000)) (internal footnote omitted). The California Rules of Professional Conduct at issue are similar to other rules that courts have found were violated by the submission of fictitious legal authority. *Compare* Cal. Rules of Pro. Conduct r. 3.3(a)(1), *with* N.Y. Rules of Pro. Conduct r. 3.3(a)(1) addressed in *Mata*, 678 F. Supp. 3d at 460; *compare* Cal. Rules of Pro. Conduct r. 3.1(a)(2), *with* Fed. R. Civ. P. 11(b)(2) ("the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law") addressed in multiple cases.

The Court finds that Mr. Francisco submitted a fictitious or non-existent case and quotation in his written motion to unseal filed on November 21, 2024; knowingly made inaccurate and misleading statements in his written reply filed on December 5, 2024 to the government's opposition that expressly raised the fictitious case and quotation; and knowingly made inaccurate and misleading statements at the December 9, 2024 hearing. The Court further finds that Mr. Francisco's inaccurate and misleading statements were not inadvertent as claimed, but knowing and made in bad faith. Despite being provided multiple opportunities to candidly acknowledge and correct his errors as required under his duty of candor to the court, Mr. Francisco unfortunately failed to do so. Though the Court accepts Mr. Francisco's apology, his post-hoc acknowledgment of the fictitious case and quotation are inadequate and demonstrate that his conduct was knowing and deliberate. *See* Francisco OSC Resp. (ECF No. 51).

### A.    Procedural Requirements

At the December 9, 2024 hearing, the Court directly expressed its concern and asked Mr. Francisco about his citation of a "hallucinated" or non-existent case, informed Mr. Francisco that the Court was not able to find the case or quotation Mr. Francisco cited, and asked Mr. Francisco about the reply he filed responding to the government's arguments regarding the non-existent case. 12/9/2024 Hrg. Tr. 2:19 - 9:20. The Court subsequently provided Mr. Francisco with formal notice of potential sanctions or disciplinary action through a written Order to Show Cause issued on December 16,

2024. Mr. Francisco was provided with the opportunity to respond fully in writing, and he filed a written response to the Order to Show Cause. Therefore, Mr. Francisco was provided with the requisite notice and opportunity to respond. *See Pac. Harbor Cap.*, 210 F.3d at 1118.

## B.    Fictitious Case and Quotation in Motion

In his motion to unseal, Mr. Francisco cited eight cases, six of which were cited in near string citation form. *See* Def. Mot. Unseal at 6, 10, 11. The primary case upon which Mr. Francisco relied— analyzing, quoting, describing the district court's analysis, and addressing in two different places in the motion— was "*United States v. Harris*, 761 F. Supp. 409, 414 (D.D.C. 1991)." *See* Def. Mot. Unseal at 6, 10.

Unfortunately, "*United States v. Harris*, 761 F. Supp. 409, 414 (D.D.C. 1991)" is not a real case. The citation has all the markings of a hallucinated case created by generative artificial intelligence (AI) tools such as ChatGPT and Google Bard that have been widely discussed by courts grappling with fictitious legal citations and reported by national news outlets. *See Mata*, 678 F. Supp. 3d 443 (leading case sanctioning counsel for fictitious case citations generated by ChatGPT); Benjamin Weiser, *Here's What Happens When Your Lawyer Uses ChatGPT*, N.Y. Times (May 27, 2023), https://www.nytimes.com/2023/05/27/nyregion/avianca-airline-lawsuit-chatgpt.html; Erin Mulvaney, *Judge Sanctions Lawyers Who Filed Fake ChatGPT Legal Research*, Wall. St. J. (June 22, 2023), https://www.wsj.com/articles/judge-sanctions-lawyers-who-filed-fake-chatgpt-legal-research-9ebad8f9; Pranshu Verma and Will Oremus, *These lawyers used ChatGPT to save time. They got fired and fined.*, Wash. Post (Nov. 16, 2023), https://www.washingtonpost.com/technology/2023/11/16/chatgpt-lawyer-fired-ai/. Similar to other fictitious case citations created by generative AI tools, the fictitious "*United States v. Harris*" case looks like a real case with a case name; a citation to the Federal Supplement, which is the reporter that publishes opinions from federal district courts; identification of a district court; and the year for the decision. *Compare* Def. Mot. Unseal at 6 & 10, *with Mata*, 678 F. Supp. 3d at 451, 454 (fictitious case cited in filing did not

14

address the claimed subject matter and had the wrong parties, the wrong court, and the wrong year identified).

In actuality, the citation "761 F. Supp. 409" is for a different case— *Harris v. Murray*, a decision from the Eastern District of Virginia that issued on July 25, 1990. *Harris v. Murray* is a civil case brought pursuant to 42 U.S.C. § 1983 against Virginia state prison officials challenging conditions of confinement at the Nottoway Correctional Center in Virginia. 761 F. Supp. 409 (E.D. Va. 1990). The district court's decision in *Harris v. Murray* addressed a motion for summary judgment brought by the defendant prison officials. *Id*. The *Harris v. Murray* decision does not address, refer to, or have anything to do with the issues raised in Mr. Francisco's motion to unseal, including 18 U.S.C. § 3509(d) Child victims' and child witnesses' rights or privacy protections related to minor victims of alleged violations of 18 U.S.C. § 2251(a) and (e), sexual exploitation of a minor. *See Harris*, 761 F. Supp. 409; Def. Mot. Unseal; Indictment (ECF No. 9).

The language Mr. Francisco quoted from the fictitious "*United States v. Harris*" case appears nowhere in the decision at 761 F. Supp. 409. *Compare Harris*, 761 F. Supp. 409, *with* Def. Mot. Unseal at 10 (quoting "The legislative history indicates that Congress intended to shield the names and addresses of child victims and witnesses from public disclosure."). As the government first identified in its opposition and as the Court informed Mr. Francisco at the December 9, 2024 hearing, this quotation does not appear in any case, let alone the fictitious "*United States v. Harris*" case. *See* Govt. Opp'n at 4-5 (quotation not found in Westlaw or Lexis[4]); 12/9/2024 Hrg. Tr. 8:4-9.

Mr. Francisco now concedes that "*United States v. Harris*" is not a real case; *Harris v. Murray* is a different case from the Eastern District of Virginia in 1990; and *Harris v. Murray* "has nothing to do with" 18 U.S.C. § 3509(d) or the issues raised in his motion. Francisco OSC Resp. at 1-2.

---

[4]   Westlaw and Lexis are comprehensive online legal research platforms.

1    Unlike other cases where counsel and litigants have admitted, sometimes

2  reluctantly, that the fictitious citations and quotations were created by generative AI,[5] Mr.

3  Francisco states that he "did not use and ha[s] never used AI (artificial intelligence) to

4  draft any of my motions." Francisco OSC Resp. at 3. Instead, Mr. Francisco states that

5  he "hastily" drafted the portion of his motion discussing the legislative history of

6  18 U.S.C. § 3509(d), which includes the fictitious case and quotation. Francisco OSC

7  Resp. at 3. Regarding his citation to the fictitious *United States v. Harris* case, he states:

8  "I am baffled to say where it came from, first in a case name which does not exist,

9  second from a district and year which does not match the citation volume and page, and

10  third, which never even addresses the Motion's issues. It was an inadvertent drafting

11  error I cannot begin to explain." *Id*.

12    The Court finds this response inadequate and not credible. Though Mr. Francisco

13  admits that he drafted his filing with the fictitious case and quotation, he fails to explain

14  where or how he found or created the fictitious case and quotation. *See Thomas v.*

15  *Pangburn*, 2023 WL 9425765, at *4 (S.D. Ga. Oct. 6, 2023) (finding inadequate pro se

16  plaintiff's responses to orders to show cause, which included apology for "unintentional

17  mistakes" and "unfortunate error" without explaining source of fictitious citations).

18  Regardless of the source of the fictitious case and quotation, an attorney with almost six

19  years of experience such that case citations are "second nature" to him (Francisco OSC

20  Resp. at 2-3), knows how to conduct legal research, retrieve cases, and accurately cite

21  those cases.[6] The Court need not make any finding as to whether Mr. Francisco actually

22  used generative AI to draft any portion of his motion and reply, including the fictitious

23

24  [5]  *See Mata*, 678 F. Supp. 3d at 450-51 ("later revealed" that counsel used ChatGPT);
25  *Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024); *Smith v. Farwell, et al.*, 2024 WL 4002576, at *3 (Mass. Super. Feb. 15, 2024).

26  [6]  Mr. Francisco lists his D.C. Bar number on his filings. Based on a public search of the D.C. Bar member directory, Mr. Francisco was admitted to the D.C. Bar on March 27,
27  2019. *See* D.C. Bar Member Directory, https://my.dcbar.org/memberdirectory (last visited Jan. 14, 2025). The Court understands that Mr. Francisco also served as an
28  Assistant Federal Defender in another district before moving to this district last year.

1  case and quotation. *See Grant v. City of Long Beach*, 96 F.4th 1255, 1256-57 (9th Cir.

2  2024) (without determining source of two non-existent case citations and

3  misrepresentation of thirteen cases, striking opening brief and dismissing appeal where

4  opening brief "represents a material failure to comply with our rules"). "Citing nonexistent

5  case law or misrepresenting the holdings of a case is making a false statement to a

6  court. It does not matter if [generative AI] told you so." Maura R. Grossman, Paul W.

7  Grimm, & Daniel G. Brown, *Is Disclosure and Certification of the Use of Generative AI*

8  *Really Necessary?*, 107 JUDICATURE 68, 75 (2023).

9      **C.    Reply and Hearing Responses to Fictitious Case and Quotation**

10      The Court ultimately finds that Mr. Francisco made knowing and willful

11  misrepresentations with the intent to mislead the Court, which violated the standards of

12  professional conduct, including the duty of candor to the court, and demonstrates bad

13  faith. Mr. Francisco's first opportunity to candidly acknowledge and correct the fictitious

14  case and quotation was in his written reply filed in response to the government's

15  opposition that directly raised the fictitious case and quotation. But instead of candidly

16  acknowledging and correcting his errors, Mr. Francisco filed with the Court the following

17  two-sentence response in a footnote in his written reply: "Defense counsel

18  acknowledges the government's observation that *United States v. Harris* does not

19  discuss the legislative history of 18 U.S.C. § 3509(d) and clarifies that *United States v.*

20  *Broussard*, 767 F. Supp. 1536, 1542 (D. Or. 1991), is the district court case from which

21  this material is quoted. This inadvertent citation error does not affect the substance of

22  the defense's position that the legislative history supports a far narrower interpretation of

23  § 3509(d) than the government asserts." Def. Reply at 8 n.3.

24      This response was not accurate and was misleading. It failed to acknowledge that

25  the *United States v. Harris* case is fictitious, failed to acknowledge that the actual case is

26  the *Harris v. Murray* case, and failed to acknowledge that the quotation is not from any

27  case. Instead, Mr. Francisco stated in his reply that an "inadvertent citation error" was

28  made and the quotation is from a different case, *United States v. Broussard*, 767 F.

17

1  Supp. 1536, 1542 (D. Or. 1991). This, too, was misleading, as the language Mr.

2  Francisco quoted does not appear anywhere in *Broussard*.

3      Though Mr. Francisco reviewed *Broussard* multiple times before filing his motion

4  to unseal, including on October 26, November 13, and November 14, 2024, he did not

5  refer to or cite *Broussard* in his motion to unseal. *See* Francisco OSC Resp., Exh. B at 2,

6  9, 11. That was likely with good reason. *Broussard* does not support Mr. Francisco's

7  motion to unseal a total of eight (8) words in his motion to compel that described Child

8  Victim 1's relationship to Defendant Hayes and Child Victim 1's gender, which had been

9  properly redacted by Judge Claire. *See* 10/30/2024 Order at 3 (ECF No. 24) (identifying

10 specific location of language to redact). *Broussard*'s discussion of § 3509(d)'s "scant"

11 legislative history describes Congress' concern with the national increase in child abuse

12 cases and the statute's "sole purpose" to "provide the district courts with 'tools' to make a

13 child's experience with the criminal justice system less traumatic and to limit the child's

14 exposure to the public." 767 F. Supp. at 1539, 1542. *Broussard* does not support Mr.

15 Francisco's request to disclose Child Victim 1's relationship to Defendant Hayes, which

16 would identify the victim. *Broussard* makes clear that information that would identify a

17 child victim should not be publicly disclosed under § 3509(d). *See id.* at 1542. In Mr.

18 Francisco's response to the Order to Show Cause, he acknowledges that *Broussard* did

19 not support his motion to unseal arguments. *See* Francisco OSC Resp. at 3 (regarding

20 cases discussing § 3509(d) legislative history, "none was on point for the issues and

21 arguments I hoped to address"), 4 ("I did ask the Court to infer from *Broussard* more

22 weight than its language offered."), 4 (Francisco's "proposition" "went beyond the

23 *Broussard* court's language"). This undermines his other post-hoc statements that he

24 actually intended to cite and rely on *United States v. Broussard*, not the fictitious *United*

25 *States v. Harris* case. *See* Francisco OSC Resp. at 2 ("meant to cite" *Broussard*), 3

26 ("intended to rely" on *Broussard*). Therefore, these statements are not credited.

27      Though the Errata acknowledged that *United States v. Harris* and the quotation

28 were non-existent, acknowledged that Mr. Francisco's reply response was not accurate,

18

and offered corrections to Mr. Francisco's motion and reply, it was inadequate. *See* Def.

Errata. The Errata did not provide any explanation for the fictitious case and quotation;

failed to disclose that Mr. Francisco was aware that *United States v. Harris* was fictitious,

which Mr. Francisco later admitted in his response to the Order to Show Cause; and did

not acknowledge that *Broussard* did not support Mr. Francisco's motion to unseal, which,

as described above, Mr. Francisco also later admitted. *See* Def. Errata; Francisco OSC

Resp. at 3, 4, 5 ("I was aware at that time that *Harris* was an incorrect citation and did

not support my argument.").

As established by his response to the Order to Show Cause, Mr. Francisco filed

his reply on December 5, 2024, <u>after</u> reviewing the government's opposition, the actual

*Harris v. Murray* case, and the *United States v. Broussard* case. Francisco OSC Resp. at

3. He reviewed the actual *Harris v. Murray* case on December 3, 2024. Francisco OSC

Resp. at 3 & Exh. B at 2 (ECF No. 51-2). On December 3, 4, and 5, 2024, Mr. Francisco

also reviewed the *Broussard* case he cited in his reply. Francisco OSC Resp. at 3 & Exh.

B at 2. The Court therefore finds that <u>before</u> Mr. Francisco filed his reply on December 5,

2024, he knew that (1) the "*United States v. Harris*, 761 F. Supp. 409, 414 (D.D.C.

1991)" "case" he cited and quoted in his motion to unseal was not a real case; (2) the

real case was *Harris v. Murray*, 761 F. Supp. 409 (E.D. Va. 1990); (3) the *Harris v.

Murray* case was a civil case that does not address, refer to, or have anything to do with

18 U.S.C. § 3509(d) or the issues raised in Mr. Francisco's motion to unseal; and (4) the

*United States v. Broussard*, 767 F. Supp. 1536 (D. Or. 1991) case cited in Mr.

Francisco's reply as the source for the quoted language did not actually include the

quoted language.

The Court does not credit Mr. Francisco's statement that "I had not realized the

quotation [I] attributed to *Broussard* was also non-existent." Francisco OSC Resp. at 5.

This is not credible given the express arguments made by the government in its

opposition that this quotation was not found in <u>any</u> case in searches conducted in both

Westlaw and Lexis. *See* Govt Opp'n at 4-5. It is also significant that the government

raised its arguments in a written filing that Mr. Francisco had three days to review, research and respond to, and that Mr. Francisco responded in writing. The government's arguments were not made for the first time in court during a hearing. Mr. Francisco reviewed the government's written opposition arguments; he did research in response to the government's arguments about his fictitious case and fictitious quotation, including reviewing the real *Harris v. Murray* case; and he reviewed *United States v. Broussard* on December 3, 4, and 5— every day between when the government's opposition was filed on December 2 and when Mr. Francisco filed his reply on December 5, 2024. *See* Francisco OSC Resp. at 3 & Exh. B at 2. It is simply not credible that Mr. Francisco did not "realize" the quotation he drafted was not in *Broussard*, a case he reviewed repeatedly before filing his reply.

In addition, the larger context in which this issue arises further demonstrates that Mr. Francisco's post-hoc statements are not credible. Arguments regarding citation to a non-existent case and non-existent quotation are serious arguments to raise against opposing counsel in any written court filing, especially when such arguments have recently and frequently led to sanctions that have made national news. These arguments were, in some ways, more serious here because they were made in a federal criminal case by a federal prosecutor (an Assistant United States Attorney) against an Assistant Federal Defender, two repeat players in federal district court. Unlike private civil litigation where counsel may never cross paths, or only cross paths for one case in one court, Assistant United States Attorneys and Assistant Federal Defenders often practice exclusively, or near exclusively, within one federal judicial district. As a result, criminal Assistant United States Attorneys and Assistant Federal Defenders appear regularly and repeatedly on different criminal cases together and in front of the same judges of the district court. Such a serious allegation challenging opposing counsel's credibility becomes that much more significant given the high likelihood that counsel on both sides will encounter each other again in the same district court on other cases, and the high

/ / /

likelihood that counsel will even appear again before the same judge.[7] For all of these reasons, the Court does not credit Mr. Francisco's post-hoc statements regarding the quotation.

The Court concludes that Mr. Francisco's written reply was knowingly made to mislead the Court, violating his duties of professional responsibility and constituting evidence of bad faith.

At the December 9, 2024 hearing, Mr. Francisco had a second opportunity to candidly acknowledge and correct his errors. Unfortunately, Mr. Francisco persisted in his misrepresentations and made matters worse. In response to the Court's questions, Mr. Francisco continued to assert that the quotation was from *Broussard*. 12/9/2024 Hrg. Tr. 3:8-4:10. After the Court provided Mr. Francisco with a hard copy of *Broussard* and Mr. Francisco was not able to locate the quotation, he suggested that the quotation was from a second *Broussard* case. *Id*. Unfortunately for Mr. Francisco, the Court had also reviewed this second *Broussard* case before the hearing, *United States v. Broussard*, 767 F. Supp. 1545 (D. Or. 1991) ("*Broussard II*"), and informed Mr. Francisco that *Broussard II* did not contain the quotation. *Id*. In fact, *Broussard II* concluded that pursuant to § 3509(d), "Congress has mandated a narrow redaction of documents, with the redacted version available for public inspection" and this limited redaction of identifying information does not constitute a closure of criminal proceedings. 767 F. Supp. at 1547-48. *Broussard II* does not support Mr. Francisco's arguments in his motion to unseal, and instead support the "narrow redaction" ordered by Judge Claire. *See id*. Mr. Francisco ultimately acknowledged in his OSC response that *Broussard II* does not contain the quotation, and does not address the issues raised in his filings. Francisco OSC Resp. at 2.

At the hearing, the Court then directly asked Mr. Francisco how his statements

---

[7]   For example, Mr. Francisco has already appeared before the undersigned on a different criminal case since the December 9, 2024 hearing in this case. *See United States v. Fahlgren*, No. 2:24-cr-0213-WBS (E.D. Cal.), 1/3/2025 Minutes for Motion Hearing (ECF No. 22).

regarding "*United States v. Harris*" could be an "inadvertent citation error" when "[i]t appears to the Court to be a hallucinated or a fictitious case. The case name is not correct. It's not *United States v. Harris*. The case citation is not correct. The district court identified is not correct. It's not the District of D.C. And the year is not correct. So I want to try to understand how it's an inadvertent citation and how the Defense states that that quoted language comes from *Broussard*." 12/9/2024 Hrg. Tr. 4:22-5:5. Instead of candidly acknowledging that *United States v. Harris* was a non-existent case, Mr. Francisco continued to suggest that *United States v. Harris* was a real case and argued (inaccurately) that the legislative history "absolutely supports the Defense position." 12/9/2024 Hrg. Tr. 5:6-14 (referring to *Harris* and *Broussard* as "district court cases").

The Court then read out loud portions of *Broussard* that addressed § 3509(d)'s legislative history and noted that "[i]t doesn't appear that *Broussard* actually supports the Defense argument." *Id*. at 5:15-6:5. The Court gave Mr. Francisco yet another chance to come clean. *Id*. In response to Mr. Francisco's suggestion that the *United States v. Harris* case was a real district court case, the Court again stated that it was "concerned that it appears that the actual citation in the Defense filing appears to be a fictitious case," and asked whether "there is actually a *United States v. Harris* case?" *Id*.

Mr. Francisco responded, "Well, there is a *United States v. Harris* case, Your Honor. The *Harris* case, I -- the Defense agrees with the Government that the *Harris* case does not support the position regarding legislative history." *Id*. at 6:6-9.

The Court then asked whether Mr. Francisco was referring to the *Harris v. Murray* case, and Mr. Francisco responded that he was not referring to *Harris v. Murray* and then stated that "There are – there are many *United States v. Harris*'s cases." *Id*. at 6:10-14.

The Court asked Mr. Francisco a fourth time, "are you acknowledging and agreeing that the case cited in your opening brief on pages 6 and 10, that that is not a real case and that the language quoted is not actually in *Broussard*?" *Id*. at 9:3-6. Mr. Francisco continued to refuse to acknowledge that *United States v. Harris* was not a real

22

1     case, and instead made the following evasive statement: "I concede that the citation in

2     the Defense's opening brief does not contain reference to 3509(d) or legislative history."

3     *Id*. at 9:7-9.

4         The Court then asked Mr. Francisco a <u>fifth</u> and final time, "do you also concede

5     that it is not a real case -- what you cited?" *Id*. at 9:13-14. Mr. Francisco continued his

6     denial and evasion, stating: "Your Honor, I can't speak to that. I can speak to that it was

7     cited in error." *Id*. at 9:15-16.

8         Not only did Mr. Francisco fail to acknowledge and correct his errors at the

9     hearing, he made matters worse by repeatedly refusing to admit that *United States v.*

10    *Harris* was non-existent despite knowing that it was non-existent. The Court gave Mr.

11    Francisco several chances to tell the truth at the hearing, providing five distinct

12    opportunities to respond to the Court's direct questions, and each time he knowingly

13    persisted in his misrepresentations to the Court.

14        In his OSC response, Mr. Francisco admits that he reviewed the real *Harris v.*

15    *Murray* case on December 3 after reviewing the government's opposition raising the

16    non-existent *United States v. Harris* case and quotation, and that at the time of the

17    December 9 hearing, he "was aware at that time that [*United States v.*] *Harris* was an

18    incorrect citation and did not support my argument." Francisco OSC Resp. at 3, 5 & Exh.

19    B at 2 (Westlaw history displaying real *Harris v. Murray* case reviewed by Mr. Francisco

20    on Dec. 3, 2024).

21        The Court can only conclude that Mr. Francisco's statements at the December 9,

22    2024 hearing were made knowingly with the intent to mislead the Court, and they

23    constitute evidence of bad faith.

24        **D.**     **Sanctions**

25        Submitting fictitious cases and quotations to the Court, and making

26    misrepresentations to the Court to insist that a non-existent case is real, "degrades or

27    impugns the integrity of the Court" and "interferes with the administration of justice" in

28    violation of Local Rule 180(e). Its harms go far beyond violation of this district court's

Local Rules. *See Mata*, 678 F. Supp. 3d at 448-49 ("It promotes cynicism about the legal profession and the American judicial system."). The Court finds that Mr. Francisco violated Local Rule 180(e) by violating California rules of professional conduct, engaging in "conduct that degrades or impugns the integrity of the Court," and engaging in conduct that "interferes with the administration of justice." E.D. Cal. L.R. 180(e); *see* Cal. Rules of Pro. Conduct r. 3.1(a)(2), 3.3(a)(1), 3.3(a)(2). As described above, the Court further finds that Mr. Francisco's conduct was in bad faith. This Court also finds that there is no indication or suggestion that Defendant Hayes or any other individual from the Federal Defender's Office was involved in or responsible for the conduct at issue besides Mr. Francisco himself.

The Court has carefully considered sanctions, including thoroughly researching how other courts have addressed similar misconduct. Courts across the country have issued sanctions against attorneys and pro se parties for submitting fictitious case citations, fictitious quotations, and related misrepresentations to the court, including (1) monetary sanctions (*Mata*, 678 F. Supp. 3d at 449, 466 (finding bad faith and issuing $5,000 monetary sanction jointly and severally against individual attorneys and their law firm for citing multiple non-existent cases in opposition brief and submitting fabricated excerpts from these non-existent cases in response to a court order); *Kruse v. Karlen*, 692 S.W.3d 43, 52, 54 (Mo. Ct. App. 2024) (sanctioning pro se party $10,000 in attorney's fees and granting motion to strike and dismissing appeal where pro se party violated Missouri Rules of Appellate Procedure, including submitting 22 fictitious case citations in his brief, without a finding of bad faith); *Smith v. Farwell*, 2024 WL 4002576 at *7 (for four fictitious case citations in opposition briefs, sanctioning plaintiff's counsel $2,000 for violating an attorney's duty to undertake a reasonable inquiry under Massachusetts Rules of Professional Conduct 11 and 7, without a finding of bad faith); *Scott v. Federal Nat. Mortg. Ass'n*, 2023 WL 6935586, at *4 (Me. Super. June 14, 2023) (for fabricated case citations and quotations in brief, sanctioning pro se plaintiff to pay defense counsel's reasonable attorney fees, costs, and expenses incurred for violating

1  Maine Rule of Civil Procedure Rule 11 and to deter other litigants from "blindly" relying

2  on AI-generated filings)); (2) striking the filing containing the fictitious citations (*Grant*, 96

3  F.4th at 1256-57 (without any findings regarding the source, striking entire opening brief

4  containing citation to two non-existent cases and misrepresentation of the facts and

5  holdings of thirteen cases); *Will of Samuel*, 206 N.Y.S.3d 888, 891 (N.Y. Sur. 2024)

6  (striking pleading that cited five non-existent cases and scheduling hearing to determine

7  if economic sanctions should be imposed)); (3) requiring written notification to the client

8  and the judges incorrectly identified as having authored the fictitious cases cited (*Mata*,

9  678 F. Supp. 3d at 466); (4) dismissing the complaint (*Thomas*, 2023 WL 9425765 at *5

10  (recommending dismissal of pro se plaintiff's amended complaint after finding bad faith

11  for citing 10 fictitious cases in a filing and failing to adequately explain the origin of the

12  fictitious citations)); and (5) dismissing or denying the appeal (*Grant*, 96 F.4th at 1256-57

13  (dismissing appeal after striking entire opening brief); *Kruse*, 692 S.W.3d at 52, 54

14  (dismissing appeal after granting motion to strike); *Ex parte Lee*, 673 S.W.3d 755, 756-

15  57 (Tex. App. 2023) (affirming trial court's denial of criminal defendant's habeas request

16  for pre-trial release or reduction of bail and holding defendant inadequately briefed

17  appeal where brief cited three non-existent cases and did not cite the record)[8]). Courts

18  have also initiated disciplinary procedures by referring attorneys to the relevant

19  disciplinary body.[9] *See Park v. Kim*, 91 F.4th 610, 615-16 (2d Cir. 2024) (referring

20

[8]  In *Ex parte Lee*, the appellate court noted although a portion of the brief appeared to
21  have been prepared using AI, the court declined to issue an OSC or refer the attorney to
22  the Texas State Bar for investigation where the court had "no information regarding why
the briefing is illogical." *Ex parte Lee*, 673 S.W.3d at 757 n.2 (citing *Mata*, 678 F. Supp.
23  3d 443).

[9]  The only case the undersigned found where a court did not issue sanctions, deny the
24  relief or action sought by the offending party, or take disciplinary measures when
counsel (rather than a pro se party) cited fictitious cases in a filing is *United States v.*
25  *Cohen*, 724 F. Supp. 3d 251 (S.D.N.Y. 2024). In *Cohen*, the court found no bad faith by
26  defense counsel because counsel did not know that his client, rather than another
defense attorney, was the source of three fictitious cases cited in the defense motion. *Id.*
27  at 258. These fictitious cases were created by Google Bard, a generative AI tool the
client admitted was the source of the fictitious cases and the court concluded it had no
28  basis to question the client's representation that he believed the cases were real. *Id.* at

counsel to court's disciplinary committee for investigation for citation to a non-existent case in reply brief).

      The Court is also mindful that "any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power," including considering "the usefulness of more moderate penalties before imposing a monetary sanction." *Zambrano*, 885 F.2d at 1480. For example, the Court considered whether a "lecture in open court" would be sufficient, *id*. at 1480 n.24, and concluded this would be insufficient given that the Court repeatedly gave Mr. Francisco multiple opportunities in open court to be candid. Despite knowing that *United States v. Harris* was a non-existent case for at least one week before the hearing when the government expressly raised this argument in its opposition, Mr. Francisco deliberately and repeatedly made misrepresentations in open court and refused to admit *United States v. Harris* was not a real case. In addition, Mr. Francisco has not adequately explained the source of the fictitious case. *See* Francisco OSC Resp. at 3; Def. Errata.

      In addition, despite Mr. Francisco's apologies and promises to follow remedial measures, *see* Def. Errata at 5 and Francisco OSC Resp. at 6, Mr. Francisco's appearance before the undersigned on a different criminal case <u>after</u> the OSC issued on December 16 and <u>after</u> Mr. Francisco responded to the OSC on December 18, further confirms that more moderate penalties are insufficient. *See United States v. Fahlgren*, No. 2:24-cr-0213-WBS (E.D. Cal.), 1/3/2025 Order Granting Motion for Protective Order at 1-2 (ECF No. 23). As described in a January 3, 2025 order issued in *United States v. Fahlgren*, on December 27, 2024, Mr. Francisco filed with the Court a Notice of Filing Amended Response "to correct a clerical error in the formatting and language." *Id*. (quoting Def. Notice (ECF No. 18)). Mr. Francisco's "amended opposition does not simply 'correct a clerical error' as stated in Defendant's notice of amendment, but deletes [] two sentences in Defendant's argument." *Id*. Though the Court ultimately accepted Mr.

---

254-55, 259.

Francisco's amended opposition brief, the Court expressed concern that Mr. Francisco's notice of amendment was not accurate and was misleading. *Id.* Unfortunately, Mr. Francisco's failure to abide by his promise in his OSC response filed just nine days earlier that he "remain[s] committed to upholding the highest standards of professionalism, accuracy, and candor in all future proceedings before this Court" and in his Errata filed just twelve days earlier that the remedial measures "will ensure the accuracy and reliability of future filings," is nothing short of astounding.

Finally, the Court has approached this issue with deliberation, taking the time to carefully review the full record, including reviewing the transcript from the hearing rather than relying on the Court's memory, conducting legal research, and considering the full range of sanctions and disciplinary measures before reaching its decision. The Court is also mindful that while federal and state courts across the country have unfortunately encountered this issue, this is the first time it has arisen in this federal district, raising the importance of educating and deterring the larger bar from repeating similar conduct.

## IV.    CONCLUSION

Therefore, the Court concludes that $1,500 in monetary sanctions issued against Mr. Francisco personally are proportionate to his conduct, while also serving as an effective deterrent to Mr. Francisco and other members of the bar, and ensuring no possible impact or prejudice on Mr. Francisco's client, Defendant Hayes.

For the reasons stated above, the Court orders the following sanctions for violation of Local Rule 180(e) and pursuant to its inherent authority:

1. Assistant Federal Defender Andrew Francisco, defense counsel, is personally sanctioned in the amount of $1,500. Within 21 days of the date of this Order, Mr. Francisco shall pay these sanctions to the Clerk of Court. The case number and a copy of this Order should be included with payment.

2. The Court orders the Clerk of Court to serve a copy of this order on the District of Columbia Bar, of which Mr. Francisco is a member (DC Bar No. 1619332), and the State Bar of California.

3.  The Court orders the Clerk of Court to serve a copy of this order on all the
district judges and magistrate judges in this district.

Dated:  January 17, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE