1    TIMOTHY ZINDEL, #158377
Attorney at Law
2    P.O. Box 188976
Sacramento, CA  95818
3    Tel: (916) 704-2665
4    timzindel@gmail.com

5    JOHN BALAZS, #157287
Attorney at Law
6    916 2nd Street, Suite F
Sacramento, CA  95814
7    Tel: (916) 447-9299
8    balazslaw@gmail.com

9

10   Attorneys for Defense Counsel
ANDREW FRANCISCO

11

12          IN THE UNITED STATES DISTRICT COURT

13        FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15

16   UNITED STATES OF AMERICA,   )  Case No. 2:24-CR-0280-DJC
                              )
17      Plaintiff,           )
                              )  **MEMORANDUM OF POINTS AND**
18        vs.            )  **AUTHORITIES SUPPORTING MOTION TO**
                              )  **RECONSIDER ORDER OF SANCTIONS ON**
19   DARAGH FINBAR HAYES,      )  **DEFENSE COUNSEL**
                              )
20      Defendant.         )
                              )
21                              )  Judge:  Hon. Chi Soo Kim
                              )  Date:    February 19, 2025
22   _____ )  Time:   10:00 a.m.

23      **I.    Introduction**

24         On January 17, 2025, the Court issued an order of sanctions against now-former counsel

25   for defendant Hayes, attorney Andrew Francisco.  Doc. 62.  Undersigned counsel have moved

26   the Court on behalf of Mr. Francisco to reconsider its order and to vacate it.  Doc. 72.

27

28

The Court should reconsider its order for the following reasons. The order does not consider the law governing imposition of sanctions ordered under the Court's inherent power, law that, when properly considered, shows why an order of sanctions is not warranted. The record does not support the Court's factual findings in several material respects. The order does not adequately consider Mr. Francisco's explanations for his error, his immediate contrition, the circumstances under which the offending citation appeared, and the fact that there was nothing to be gained by the mistake. By not considering the governing law, particularly as it applies to criminal defense lawyers, and by not considering other reported examples of inherent-power sanctions, the Court found that Mr. Francisco acted in bad faith when he did not do so. Even assuming some sort of sanction was appropriate, the punishment inflicted by the order exceeded a reasonable punishment for Mr. Francisco's mistake. It undermined multiple attorney-client relationships involving Mr. Francisco, chilling defense counsel throughout the district, and potentially costing Mr. Francisco his career, while his mistake, even if it had been deliberate (which it was not), had no effect on the case against the defendant.

Counsel respectfully ask the Court to vacate its sanctions order (doc. 62), including its finding thar Mr. Francisco acted in bad faith, and discharge the Order to Show Cause (doc. 50).

## II.    Factual and Procedural Background

The Court's sanctions order of January 17, 2025, had its origins in passages contained in Mr. Francisco's motion to unseal a motion to compel discovery. Docs. 16, 32. He filed the motion to compel, doc. 16, on October 25, 2024, and the motion to unseal, doc. 32, on November 21, 2024. In between, there were disagreements between the parties over discovery, over a proposed protective order, and over a request to continue a hearing on the motion to compel. Docs. 20-24.

In his November 21 motion, Mr. Francisco moved to unseal the motion to compel he filed on October 25, 2024. The motion to compel had been sealed by the Clerk's Office after an email request by an Assistant U.S. Attorney, also made on October 25. The Clerk issued a "notice of docket correction" directing Mr. Francisco to "file a Request to Seal along with a

proposed order immediately."[1]  Doc. 16.  Mr. Francisco immediately complied, asking to seal

the entire document.  Doc. 18.  However, recognizing that the sole concern was to protect

"identifying information relat[ing] to a" purported "minor victim," the Courtroom Deputy issued

a minute order denying the motion to seal without prejudice, suggesting a redacted motion be

filed along with a sealed *un*redacted version.  Doc. 19.  Mr. Francisco filed an amended motion

to compel on October 31, redacting the questioned information.  Doc. 25.[2]  The government filed

an opposition to the motion on November 12, doc. 27, and Mr. Francisco filed a reply brief two

days later, doc. 29.  Magistrate Judge Claire heard the motion on November 15 and denied it

without prejudice, without issuing a written order.  Doc. 30.

At the hearing, Judge Claire noted that the parties had identified three categories of

discoverable materials:  (1) reports that could be (and had been) readily disclosed; (2) materials

depicting alleged child sexual abuse material (csam), which could only be viewed at a

government facility under 18 U.S.C. § 3509(m); and (3) non-csam material that the government

would not allow the defense to see without a protective order.  At the time, the parties had not

agreed on the terms of a protective order because the defense declined to use the term "victim" in

a pretrial filing, preferring neutral terms such as "identified minor" or "minor subject."  *See* Doc.

25 at 9:10-18.  Judge Claire acknowledged the defense's concerns ("I'm writing orders in some

cases [where] sometimes I elect not to use that word") but denied the motion without prejudice

because no binding authority held that use of the word "victim," before trial, violated the rights

of a defendant.  "If there are discovery materials that you review that you think should not be

---

[1]     While undersigned counsel appreciate that the Clerk decided to seal the document after
an email request, a practice that can serve to protect defendants as well as witnesses or "victims,"
Eastern District Local Rule 141(a) provides that "Documents may be sealed only by written
order of the Court, upon the showing required by applicable law."   As for unsealing, subdivision
(e)(2)(3) authorizes "any person" to move to unseal documents, and documents may be ordered
unsealed "upon a finding of good cause or consistent with the applicable law."

[2]     The original motion to compel, doc. 16, remains sealed and has not been seen by
undersigned counsel.

protected, you can certainly – this is what without prejudice means – bring a motion saying this particular document should be produced. Otherwise, you folks just have to agree to terms of a protective order or you're not going to see this stuff."[3]  The parties stipulated to a protective order on November 25, which was ordered the following day.  Doc. 35.

Six days after the November 15 hearing, Mr. Francisco filed the motion to unseal that formed the basis of the Court's sanctions order, doc. 32.  The motion sought to unseal the unredacted motion to compel on the basis that "the Clerk of the Court acted without legal authority in restricting public access to the document, and the government's informal request for the Clerk's intervention constituted an improper intrusion into judicial processes."  Doc. 32 at 1:25-28.  Whatever feelings this may have engendered, Mr. Francisco was correct that the motion had not been sealed pursuant to a request under Local Rule 141, as the Local Rules require, but by action of the Clerk's Office based on an email request by the government.  *See* Doc. 17.  The government never filed a request to seal pursuant to the Local Rules, and Magistrate Judge Claire denied the sealing motion Mr. Francisco filed at the Clerk's suggestion. Docs. 18-19.  In response to Mr. Francisco's request that the Court reconsider a week-long continuance it granted the government for the hearing on Mr. Francisco's original motion to compel discovery, Judge Claire issued an order that "electronic access to the unredacted documents filed at ECF No. 16 will remain restricted; but only "[p]ending hearing on the motion to compel discovery."  Doc. 24.  When Judge Claire heard the motion to compel on November 15, nobody asked to continue restricting access to document 16.  The matter was not discussed, but access to the unredacted document 16 remained restricted.

In his motion to unseal document 16, the unredacted motion to compel, Mr. Francisco also argued that document 16 "does not disclose any identifying information about the alleged minor victim, and Ninth Circuit precedent establishes that relational terms, gender pronouns, and

---

[3]     These quotations are taken from an audio recording of the hearing held November 15 before Judge Claire.

general descriptors do not violate statutory privacy protections." Doc. 32 at 2:8-12, 11:14-25 (citing multiple cases).[4] The motion had been sealed by the Clerk based solely on the government's representation that it "contain[ed] identifying information of a minor victim," doc. 17, a matter the Court had not yet decided (the only request to seal the document, filed by Mr. Francisco himself, was denied). Mr. Francisco carefully and correctly laid this information out in his motion to unseal on November 21. *See* doc. 32, pp. 3-5. He correctly noted that, at the November 15 hearing, the Court did not address his concern about whether the material – specifically, "relational terms and gender pronouns" of an otherwise-unidentified, alleged victim of the offense – should have been sealed in the first instance. *Id.* at 5:15-19. He also noted, correctly, that the Court did not address his concern about the Clerk's Office having placed the motion under seal without any party having made a formal request, as the Local Rule requires. *Id.* at 5:10-15.

To support his motion, Mr. Francisco pointed out that Local Rule 141.1(a) provides that "[a]ll information provided to the Court in a specific action is presumptively public," and that Local Rule 140(e) requires "an order on a sealing request" before the Clerk may seal a document. He also noted that 18 U.S.C. § 3509(d)(2) requires that "papers to be filed in court that disclose the name of or any other information concerning a child shall be filed under seal without the necessity of obtaining a court order."

The sanctions order arose because, in arguing that the quoted language was limited to "prevent the disclosure of specific identifying details, such as 'names and addresses,' rather than general descriptors," Mr. Francisco cited a case that could not be found in the Federal Reporter. As documented in the sanctions order at doc. 62, page 2, the following excerpts from the brief could not be traced to the cited case in the Federal Reporter. First: "*United States v. Harris*," at "761 F. Supp. 409, 414 (D.D.C. 1991) (citing Congressman DeWine's remarks during the

---

[4]    In addition to numerous published Ninth Circuit opinions, press releases from the EDCA U.S. Attorney's Office often refer to "minor victims" in sex offense cases using their gender pronouns and gendered terminology.

statute's enactment)."  Doc. 32 at 6:22-26.  Second:  similar information at page 10, with a parenthetical quotation, "('The legislative history indicates that Congress intended to shield the names and addresses of child victims and witnesses from public disclosure.')."  Mr. Francisco also argued that the "district court's analysis in *Harris* is consistent with the common practice of using initials in court filings involving minors," an assertion he supported by correctly quoting Federal Rule of Criminal Procedure 49.1(a)(3), which requires use of "minor's initials" in certain electronic or paper filings containing personal identifying information.

The government caught the error in its response to Mr. Francisco's motion.  Doc. 36 at 4:23-5:3.[5]  However, the government also conceded that it never filed a request to seal the document under the Local Rules.  It wrote, "There was nothing improper about counsel for the government alerting the Clerk's office (copying defense counsel) to identifying information concerning a minor victim contained in the defense motion, and request[ed] temporary restriction of public access until the order could be resolved."  *Id.* at 3:11-14.  Nor did the government dispute that the question whether to continue restricting access to the unredacted motion had not been resolved at the hearing before Judge Claire, although the Court had only restricted access "pending" that hearing.

Mr. Francisco acknowledged in his reply brief that the *Harris* case he cited "does not discuss the legislative history of 18 U.S.C. § 3509(d)."  Doc. 37 at 8 n.3.[6]  He noted that the information he relied upon could be found in *United States v. Broussard*, 767 F. Supp. 1536, 1542 (D. Or. 1991).  He said that the citation to *Harris* was "an inadvertent citation error [that]

---

[5]    The government's response adopted an unusually harsh tone, saying that Mr. Francisco's claims were "false," "absurd," "sweeping and baseless," and employed an *ad hominem* attack: "This is not the first time defense counsel has filed a motion that included sweeping, baseless accusations against the government in this case."  Doc. 36 at 4.  At the only hearing on the matter, Judge Claire treated Mr. Francisco's arguments respectfully, noting that she herself sometimes eschewed use of the term "victim" when writing pretrial orders.  She simply urged the parties to agree on a protective order, which they did shortly after the hearing.

[6]    Mr. Francisco's reply brief was filed on December 5, 2024, while he was attending a sentencing advocacy workshop in Atlanta, Georgia.

does not affect the substance of the defense's position that the legislative history supports a far narrower interpretation of § 3509 than the government asserts." Doc. 37, at 8 n.3.

Although neither Mr. Francisco nor anyone else seemed to have noted it, either at the hearing before Judge Claire on November 15 or the hearing before this Court on December 9, Mr. Francisco had already cited *Broussard* to support his argument about the legislative history, as well as the legislative history itself. He cited it in a footnote at page 5 of his reply to the government's opposition to his motion to compel, doc. 29, filed on November 14, 2024. He also quoted the case accurately: "The legislative history, although scant is helpful. In describing the confidentiality provision, Congressman DeWine explained that the '[b]ill makes it easier for a child to testify in court ... it forbids the release of the witness's name and address.' H.R. 8754, October 3, 1990. *See also* Congressional and Administrative News, 101st Cong. 2nd Sess., P.L. 101–647 (Special procedures include privacy and address protection to protect child witnesses by restricting the public release of any information identifying the child witness)." *Broussard*, 767 F. Supp at 1542.

This Court held a hearing on Mr. Francisco's motion to unseal on December 9, 2024. Doc. 41. That hearing has been transcribed and will be referred to hereafter as R.T. Doc. 48.

Although Mr. Francisco had acknowledged his drafting error in his reply brief, citing to the authority he intended to cite, which he had put before the Court in an earlier filing, the Court began the hearing not by addressing the merits of Mr. Francisco's motion, but by addressing the citation error. R.T. at 1-10. The Court noted that the precise quotation in Mr. Francisco's motion, "The legislative history indicates that Congress intended to shield the names and addresses of child victims and witnesses from public disclosure," could not be found in *Broussard*. The Court quoted a different passage from *Broussard* having nothing to do with the issue before the Court ("The legislative history indicates that Congress was concerned about the increase in child abuse cases . . .") and, after doing so, said, "I want to try to understand how the Defendant's response in Footnote 3 of its reply, how it's an inadvertent citation error. It appears to the Court to be a hallucinated or a fictitious case." R.T. 4:22-25. Mr. Francisco said, "I

sincerely apologize for the lack of attention to those citations" but pointed out – correctly – that "the substance absolutely supports the Defense position" about the legislative history.  R.T. 5:11-13.  The Court then quoted another inapposite sentence from *Broussard*, then quoted the sentence that Mr. Francisco had cited to the Court in his original moving papers when responding to the government's opposition on November 14.  Doc. 29 at 5 n. 3.  That sentence said, as noted above, that "Congressman DeWine explained that the bill makes it easier for a child to testify in court.  *It forbids the release of the witness's name and address.*"  R.T. 5:21-25 (emphasis added).  The Court failed to note, as discussed more fully below, that the language it quoted was identical in substance to the legal argument Mr. Francisco had made in his moving papers, including in the mistaken citation to *United States v. Harris.*

Moving on, the Court asked, "But you're saying there is actually a *United States v. Harris* case?"  R.T. at 6:4-5.  Mr. Francisco said that "there is" but that the one he had cited "does not support the position regarding legislative history."  R.T. 6:6-9.[7]  Although he had already acknowledged his citation error prior to the hearing, the Court continued: "So, Mr. Francisco, are you saying there's a different *United States v. Harris* case that deals with this specific statutory provision? So you are probably getting that the Court is concerned that there was a citation to a hallucination, like a case that's not actually real."  R.T. 6:16-20.  Again, Mr. Francisco apologized for his citation error, but explained (correctly) that "the substance is accurate and the substance was what I had directed the Court's attention to in my initial filing."  R.T. at 6:23-7:1.

Although not noted at the hearing, there is a case entitled *United States v. Harris*, with a different citation, No. 2:14CR76, 2016 WL 3190482 (E.D. Va. June 6, 2016), that specifically addresses 18 U.S.C. § 3509(d), the statute at issue.  A person researching section 3509(d) on Westlaw would quickly find this case by searching section 3509(d) and a term such as

---

[7]    Although there is no *United States v. Harris* case at 761 F. Supp. 409, there is a *Harris v. Murray*, 761 F. Supp. 409 (E.D. Va. 1990), a case dealing with conditions of confinement.

"disclosure." There are only 49 reported cases listed under the "Notes of Decisions" under the Westlaw U.S. Code Annotated entry for 18 U.S.C. § 3509, according to a search done by counsel on February 10, 2025. *Harris*, a district court Memorandum Order, does not discuss the legislative history of section 3509, but does pertain to "disclosure of the names, or of other information concerning victimized children" who had testified at trial. *Id.* at *1. The *Harris* case is also discussed in publicly available databases, including Casetext, and can be found through general internet searches. The citation is different from that in Mr. Francisco's motion, but the title is the same and the case pertains to disclosure of identity information under section 3509(d) (in *Harris,* defendant's wife moved to disclose the names of children and witnesses who had testified at defendant's trial so that she could use them in a divorce and custody proceeding).

The Court said, "I don't understand how this could happen. It's – inadvertent citation errors are things like the wrong page is cited or something like that." R.T. at 7:19-21. The Court also said (incorrectly) that *Broussard* "doesn't stand for the propositions that the Defense argues and the quoted language is different, so that is very concerning to the Court." R.T. 8:1-3. "And the Defense's response to that does not appear to be accurate and it appears to be misleading and that is very concerning to the Court." R.T. 8:7-9. Mr. Francisco apologized a third time ("Defense counsel sincerely apologizes for the confusion and the poor attempt at remedying the issue, Your Honor") but again explained that his goal was to "redirect the discussion to the legislative history." R.T. 9:1-2; 8:13-25. *Broussard* in fact quotes the legislative history, specifically Congressman DeWine's statement that the legislation forbids disclosure of witness "names and addresses."

Defense counsel's concerns about the Clerk sealing the document without requiring the government to file a request to seal were entirely legitimate. In another case in this district, defense counsel recently moved in a criminal case to recuse a district judge who stayed a magistrate judge's release order based solely on the government's *ex parte* request, made without seeking input from defense counsel, and which was not supported by a formal appeal of the release order. *See United States v. Millett,* 2:24-CR-00267, at doc. 48.

Although the Court acknowledged at the hearing that it had read document 29, the reply brief filed on November 14, 2024, in which Mr. Francisco first cited *Broussard*'s quotation of the legislative history, R.T. 9:23-10:2, the Court appears to have overlooked the brief's *Broussard* footnote. Rather than note that portion of the brief, the Court focused on Mr. Francisco's concern about the Clerk sealing the motion at the government's informal request. The Court noted that "Judge Claire held a hearing on November 15th and she issued her order and denied the motion to compel." R.T. 10:6-9. But the Court erred in assuming that Judge Claire had considered the defense's concerns about the Clerk sealing the motion without a formal request to seal. The Court said, "So given that that was raised in the motion to compel, that's one issue the Court has considered." R.T. at 10:10-11. However, as noted above, the Court only sealed the document "pending" the November 15 hearing, and nobody addressed the matter of sealing at that hearing. In other words, the issue was not one the Court had considered, and Mr. Francisco was within his rights to raise it, as he had done in his motion. The Court also noted, and the parties agreed, that their protective order covered the use of any language describing the relationship, if any, between the defendant and the person the government identified as a victim.

The Court also ruled that the Clerk's Office did not violate Local Rule 140(e) by sealing the motion to compel at the government's request. R.T. 21:2-19. The Court criticized Mr. Francisco's for expressing concern about the Clerk bypassing Rule 140(e), calling his arguments "inflammatory" and unprofessional. R.T. 24:14-23. The Court said, "it's completely baffling to the Court why these arguments were even made to begin with. And not only were they made, they were made twice." R.T. 26:10-13.

The quoted language from *Broussard*, which the Court read at the hearing, which Mr. Francisco had cited in another filing, and which he cited to the Court in his reply brief, was effectively if not precisely identical to the argument Mr. Francisco had made in his opening brief, "that the statute was designed to prevent the disclosure of specific identifying details, such as 'names and addresses.'"

On December 16, 2024, a week after the hearing, the Court issued an "Order to Show Cause Why Sanctions of Other Appropriate Disciplinary Action Should Not Issue Against Assistant Federal Defender Andrew Francisco." Doc. 50. The order quoted portions of the transcript of the hearing concerning the mistaken citation to *United States v. Harris*, including Mr. Francisco's apologies and his acknowledgement that "it was cited in error." *Id.* at 7. The order cited Eastern District Local Rule 110, which allows the Court to impose sanctions "within the inherent power of the Court"; Local Rule 180(e), which obligates attorneys to comply with California standards of professional conduct; and Local Rule 184(a), which authorizes a criminal contempt proceeding. *Id.* at 7-8. However, the order did not state what rule, if any, the Court believed Mr. Francisco had violated.

The OSC gave Mr. Francisco only two days to file a response. He nonetheless timely filed a response, taking "full responsibility for" his errors and acknowledging his error in citing *United States v. Harris*, a case that does not exist. Doc. 51, at 1. He explained that he had meant to cite *Broussard* and acknowledged that the precise quote was not in the cited *Broussard* opinion. *Id.* at 2. *Broussard* does discuss the "legislative history" of section 3509(d) and does quote from it in stating that the statute "forbids the release of the [child] witness's name and address." *Broussard*, 767 F. Supp. at 1542.

Mr. Francisco noted that he had filed the motion immediately before a status conference held before the district judge on November 21 and that, in his haste, he "did not ask for any cite check review." Doc. 51 at 2:21. He said, "My citation to *Harris* was inadvertent and I have wracked my memory to try to recall where I looked to come up with it, to no avail." *Id.* at 3:5-6. "It was an inadvertent drafting error I cannot begin to explain." *Id.* at 9-10. He again explained that he had intended to cite the language from *Broussard* discussing the statute's legislative history, and he attached a record of his Westlaw search history showing that he had accessed *Broussard* five separate times before the hearing, three of those times (10/26/24, 11/13/24, and 11/14/24) before he filed the motion to unseal. *Id.* at 11-16. He said although he had checked *Harris* after reading the government's response to his motion, he neglected "to compare the

quotes I entered with any language in *Broussard* and deeply regret not doing so." *Id.* at 3:20-22. He noted that he filed a Notice of Errata to correct the record before the Court issued its OSC, acknowledging his errors and apologizing to the Court. *Id.* at 4:9-12, referencing doc. 47. He said he had made a human error rather than an intentional one. *Id.* He detailed remedial steps he had taken: he had "implemented specific measures to prevent similar errors in the future, including enhanced proofreading protocols, citation verification using reliable legal databases, and improved time management to allow for thorough final reviews, including by others, before filing." *Id.* at 5:19-23. He concluded with yet another apology to the Court and wrote, "I remain committed to upholding the highest standards of professionalism, accuracy, and candor in all future proceedings before this Court, while continuing to represent my clients zealously and ethically, consistent with my obligations to the Court, the expectations of the Professional Conduct Rules, and my role as defense counsel." *Id.* at 6:7-12.

On January 17, the Court issued its order sanctioning Mr. Francisco – the subject of this motion. Doc. 62. The Court again quoted the transcript of the hearing and noted that it had "firmly rejected" several defense arguments. *Id.* at 2-9. This order is discussed in detail in the next section of this Memorandum.

### III.    The Court Should Vacate its Order, Enter a Finding that Mr. Francisco Did Not Act in Bad Faith, and Discharge the O.S.C.

Counsel ask the Court to reconsider and then vacate its sanctions order for each of the reasons discussed below.

#### A.    The Order Did Not Acknowledge or Apply the Correct Legal Standard.

The Local Rules address attorney sanctions in two places. First, Local Rule 110, "Sanctions for Noncompliance with Rules," authorizes the imposition of "any and all sanctions authorized by statute or Rule or within the inherent power of the Court." This Rule applies only after "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court." Second, Local Rule 184(a) authorizes "proceedings for contempt under 18 U.S.C. § 401 or Fed. R. Crim. P. 42" when an attorney "engages in conduct that may warrant discipline or

other sanctions." The Court did not initiate criminal contempt proceedings under section 401 of Title 18 and Federal Rule of Criminal Procedure 42, which have specific procedural protections not observed here, so counsel assume that Local Rule 184(a) played no role in the Court's analysis despite that the Court cited it in the order. *See Miller v. City of Los Angeles,* 661 F.3d 1024, 1030 (9th Cir. 2011) (explaining that criminal contempt "may be imposed only by following the procedures applicable to criminal cases") (citing *Mackler Prods., Inc. v. Cohen,* 225 F.3d 136, 139 (2d Cir. 2000), as "reversing $2000 in non-compensatory sanctions because 'the District Court erred in imposing [the sanctions] without providing the procedural protections employed in the criminal process'").

The order is somewhat unclear about what Local Rule the Court believed Mr. Francisco violated but it appears that the Court imposed an inherent power sanction under Rule 110.[8] It seems that the Court believed he violated Rule 3.3 of the Rules of Professional Conduct of the State Bar of California, which attorneys are obligated to follow under Local Rule 180(e). Doc. 62 at 11:10-22. Specifically, the Court concluded that Mr. Francisco "knowingly ma[d]e a false statement of fact or law" and that he "knowingly misquote[d] . . . the language of a book, statute, decision or other authority."[9] *Id.* at 11:10-17. In its order, the Court states that it "ultimately finds that Mr. Francisco made knowing and willful misrepresentations with the intent to mislead the Court, which violated the standards of professional conduct, including the duty of candor to the court, and demonstrates bad faith." Doc. 62 at 17:10-13. The Court's finding rested on Mr. Francisco's citation to the non-existent *United States v. Harris* and on his mistake in placing quotation marks around his paraphrase of the legislative history discussion in *Broussard.*

However, the order fails to cite any of the legal standards governing issuance of inherent power sanctions. The Court notes that it *has* this power, citing *Fink v. Gomez,* 239 F.3d 989 (9th

---

[8]    The order does not claim that Mr. Francisco violated "any order of the Court." *See* E. Dist. Local R. 110.

[9]    As discussed in the next section of this brief, he did neither of these things.

Cir. 2001), but does not mention the grounds upon which it may exercise the power.  That omission caused the Court not to appreciate the legal insignificance of Mr. Francisco's mistake.  In other words, the Court failed to see that Mr. Francisco's mistake, even if it had been intentional, was an immaterial mistake not worthy of sanctions.  (Its immateriality is also strong evidence that it was accidental, for no advantage can be gained by attributing a true statement of fact or law to a non-existent case.)

The Ninth Circuit in *Fink* held "that an attorney's reckless misstatements of law and fact, when coupled with an improper purpose . . . are sanctionable under a court's inherent power." 239 F.3d at 994.  *Fink* makes clear that the court has authority under its inherent power to impose sanctions only "when an attorney has made reckless misstatements of law and fact, and has done so *for an improper purpose*." 239 F.3d at 990 (emphasis added).  The Court in *Fink* noted that the Supreme Court discussed what "bad faith" means in *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 765 (1980), and *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).  In *Chambers*, the Court used "bad faith" to mean "delaying or disrupting the litigation or by hampering enforcement of a court order." *Fink*, 239 F.3d at 992.  *Roadway* "treated bad faith as being distinct from delay, disruption, and disobeying a court order," instead using it to mean "disobedience, bad faith, and vexatious, wanton or oppressive actions." *Id.*  Synthesizing these principles, the Court held that inherent-power sanctions "are justified when a party acts *for an improper purpose*." *Id.* (emphasis added).  Among examples, the Court quoted *Primus Auto. Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir. 1997), which held that "a finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument . . . for the purpose of harassing an opponent.'" *Id.*

Also missing is any recognition of the care the Court must take before imposing sanctions.  The Supreme Court has written, "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers,* 501 U.S. at 44-45.

The Court made no finding that Mr. Francisco harbored an improper purpose. The Court found that "Mr. Francisco submitted a fictitious or non-existent case and quotation in his written motion to unseal"; that he "knowingly made inaccurate and misleading statements in his written reply"; and that he "knowingly made inaccurate and misleading statements at the December 9, 2024 hearing." Doc. 62 at 13:9-15. "The Court further finds that Mr. Francisco's inaccurate and misleading statements were not inadvertent as claimed, but knowing and made in bad faith." *Id.* at 13:14-15. Defense counsel believe these findings are incorrect, a matter discussed in the next section of this brief. However, even if the findings were supported by the record, and that Mr. Francisco in fact made up a fake case and a fake quotation, then failed to acknowledge doing so, that action alone would not be enough under the law to justify the imposition of sanctions absent evidence he intended to delay or disrupt the proceedings, harass an opponent, or gain some improper litigation advantage.

The order makes no claim and no finding that Mr. Francisco acted for an improper purpose, as the law requires. He had nothing to gain for himself or for his client by citing a made-up case to support an otherwise accurate statement about legislative history rather than the correct case. He cited *"United States v. Harris"* to support his argument that the legislative history of section 3509(d) showed the bill "was designed to prevent the disclosure of specific identifying details, such as 'names and addresses,' rather than general descriptors." Doc. 32 at 6:22-26. In fact, the legislative history says exactly that: "Congressman DeWine explained that the '[b]ill . . . forbids the release of the witness's name and address.'" *United States v. Broussard*, 767 F. Supp. at 1542, citing H.R. 8754, October 3, 1990. Here is a picture of the quoted language from the Congressional Record:

CONGRESSIONAL RECORD—HOUSE

...can of this bill we will have in Federal law a very tough, very firm standard in this area.

Let me cite a couple of specific things the bill does. It allows a child to testify in a room other than the courtroom to reduce emotional stress. It allows the testimony of a child to be taken by recorded deposition for use at trial. It allows the use of anatomical dolls to describe sexual abuse, and forbids the release of a child witness's name and address.

This bill of rights also helps ensure speedy trial in a case where a child is a...

Mr. Francisco and his client stood to gain no advantage in citing to the Court an accurate statement of the legislative record even by citing the wrong case. Nobody was deceived, nobody was cheated, no delay ensued, nothing wanton or oppressive was done, and no court order was violated. There could be no strategic advantage in citing an erroneous district court case (*Harris*) rather than the correct one (*Broussard*), which had already been known by and correctly cited by defense counsel in a prior brief. While the Court was not persuaded by the citation or argument, at no point has any person disputed that Mr. Francisco accurately recounted the Congressman's statement that section 3509(d) "forbids the release of a child witness's name and address," the sole reason for which he had cited the erroneous *Harris* case.

In ordering sanctions, the Court cited other civil cases involving "the submission of fake opinions," doc. 62, at 16-17 & 16 n.6, citing, *inter alia, Mata v. Avianca, Inc.*, 678 F.Supp.3d 443, 448-49 (S.D. N.Y. 2023). Even if Mr. Francisco had deliberately manufactured a fake case or used a tool of artificial intelligence as the Court speculated, his conduct falls far short of cases in which attorneys submitted entire briefs prepared using artificial intelligence. In *Mata*, the questioned briefs cited six fictitious cases and were generated using ChatGPT; when confronted, the attorneys doubled-down by submitting fabricated judicial opinions containing additional false

citations; they then did not correct the record when given the opportunity.  The Court found that attorney LoDuca had not read any of the cases he cited in his offending brief; had sworn to the truth of an affidavit "with no basis for doing so"; and lied to the Court that he was going on vacation when he was not.  *Id.* at 464; *see also Grant v. City of Long Beach*, 96 F.4th 1255, 1256 (9th Cir. 2024) (striking appellate brief and dismissing civil appeal where appellants' brief was "replete with misrepresentations and fabricated case law" and "misrepresent[ed] the facts and holdings of numerous other cases cited in the brief").  Only then did the Court order sanctions.

The *Mata* sanctions order rested on Federal Rule of Civil Procedure 11(b)(2), which has no analogue in the Federal Rules of Criminal Procedure.  In imposing sanctions, the Court noted that "[a]n attorney violates Rule 11(b)(2)," which provides that attorney "certifies" the validity and sincerity of their citations and arguments, "formed after an inquiry reasonable under the circumstances," when "existing caselaw unambiguously forecloses a legal argument."  678 F.Supp.3d at 460; *see also Park v. Kim,* 91 F.4th 610, 615 (2d Cir. 2024) (referring attorney who also repeatedly violated discovery orders despite court warnings to Court's Grievance Panel as "it appears that Attorney Lee made no inquiry, much less the reasonable inquiry required by Rule 11 and longstanding precedent, into the validity of the arguments she presented"); *Smith v. Farwell,* 2024 WL 4002576 (Mass. Super. Feb. 12, 2024) (sanctioning attorney under Mass R. Civ. P. 11 and 7 for using Chat GPT to cite multiple fake cases in a brief).  No such certification exists under the Criminal Procedure Rules.  More important, as noted above and below, the point of law (though not the exact quote) Mr. Francisco identified when incorrectly citing *Harris,* rather than *Broussard,* was both factually and legally accurate.

In *Thomas v. Pangburn*, 2023 WL 9425765 (S.D. Ga. 2023), cited in the order at page 16, a *pro se* plaintiff cited ten cases "that simply did not exist," then failed to explain their origins in "response to a direct order" from the Court.  *Id.* at *5.  Again relying on Rule 11 of the Civil Rules, the Court found that plaintiff had an improper purpose because he failed to explain how he got the citations and that he "engaged in bad faith by 'delaying or disrupting the litigation [through the fictitious citations and by] hampering enforcement of a court order.'"  *Id.*

The Court nevertheless declined to order money sanctions and instead dismissed plaintiff's action as a sanction, while noting that it had already ruled that the case should be dismissed on a different ground.  *Id.*

The reliance on Civil Procedure Rule 11 in *Mata* and *Pangburn* is also unmentioned in the order, although *United States v. Hayes* is a criminal case that is not governed by the Federal Rules of Civil Procedure.  In relying on two civil cases, the Court failed to note that criminal advocacy is substantially different from civil advocacy and that courts routinely urge restraint in imposing sanctions against criminal defense counsel, just as they do against prosecutors.  In a criminal case, "[t]he need for restraint is uppermost when a judge is considering the imposition of sanctions on defense counsel."  *In re Plaza-Martinez,* 747 F.3d 10, 13 (1st Cir. 2014) (vacating sanctions against defense attorney). "[I]n such a situation, the judge must 'bear in mind such counsel's important constitutional function.'"  *Id.*, citing *United States v. Agosto–Vega*, 731 F.3d 62, 64 (1st Cir. 2013) (vacating sanctions against defense attorney). "It is, therefore, a bedrock proposition that sanctions, though an available weapon in a trial judge's armamentarium, should not be deployed so as 'to chill vigorous but legitimate advocacy' in a criminal case."  *Id.*, citing *United States v. Figueroa–Arenas*, 292 F.3d 276, 279 (1st Cir. 2002) (vacating sanctions against defense attorney).  In its order, the Court did not consider these limitations on its power to sanction criminal defense counsel.

## B.    The Record Does Not Support the Court's Factual Findings.

The Court found that Mr. Francisco "knowingly made inaccurate and misleading statements" in a reply brief filed on December 5, 2024 and at a hearing on December 9, 2024. Doc. 62, at 13:9-13.  The Court rejected his explanation and found his actions to be knowing and deliberate rather than inadvertent.  *Id.* at 13:14-20.

The record does not support this finding. The sanctions order notes that in his motion to unseal, Mr. Francisco cited eight cases.  *Id.* at 14:6-7.  As noted above, the Court is correct that one of these eight cases, *United States v. Harris*, 761 F. Supp. 409, 414 (D.D.C. 1991), does not exist.  The Court also noted that the defense motion includes a direct quote, "The legislative

history indicates that Congress intended to shield the names and addresses of child victims and witnesses from public disclosure," that is not found in any other cited case.  The record, however, does not support the finding that this was done intentionally and deliberately.

Indeed, Mr. Francisco had already cited the correct case in a prior brief, *United States v. Broussard*, 767 F. Supp. 1536, 1542 (D. Or. 1991).  There could be no strategic reason for erroneously citing one district court case, *Harris*, rather than the correct one, *Broussard*.  The quote in the defense's motion was an error because it was a quote.  But it would have been entirely proper for defense counsel to have said essentially the same thing with a citation to *Broussard*.

For example, instead of arguing in the motion to unseal:

> The legislative history of § 3509(d) supports this interpretation.  In *United States v. Harris,* the court examined the statute's background, citing Congressman DeWine's remarks that emphasized preventing the disclosure of names and addresses of child victims or witnesses. 761 F. Supp. At 414.  This focus indicates that Congress aimed to shield specific identifying information, not to impose broad restrictions on all descriptive terms.  *Id.*("The legislative history indicates that Congress intended to shield the names and addresses of child victims and witnesses from public disclosure.").

Doc. 32, at 10:11-18.

Mr. Francisco could have made the same argument citing *Broussard* and language from that case, such as by writing:

> The legislative history of § 3509(d) supports this interpretation.  In *United States v. Broussard,* the court examined the statute's background, citing Congressman DeWine's remarks that emphasized preventing the disclosure of names and addresses of child victims or witnesses. 767 F. Supp. 1536, 1542 (D. Or. 1991).  This focus indicates that Congress aimed to shield specific identifying information, not to impose broad restrictions on all descriptive terms.  The legislative history indicates that Congress intended to shield the names and addresses of child victims and witnesses from public disclosure.  *See id.* (quoting DeWine as explaining that the law "forbids the release of the witness's name and address.").

By citing the wrong case instead of *Broussard* and using an inaccurate quote, the brief was sloppy.  But the argument and key points are supported by a case that defense counsel had

already obtained through Westlaw legal research.  *See* Doc. 51-2 (Exhibit B to Response to OSC).  Contrary to the sanction order's conclusion, doc. 62, at 18:3-26, it does provide support for the argument that section 3509(d) should be construed narrowly to restrict only information that truly identifies the child victims, such as their names and addresses.  Of course, the Court had every right to reject the argument on the merits, as it did.  Legislative history, especially that of a single legislator, is often viewed as of little weight.  *See Brook v. Writer's Guild of Am. W. Inc.,* 762 F.2d 1349, 1356 (9th Cir. 1985) ("The remarks of legislators opposed to legislation are entitled to little weight in the construction of statues.").  And the Court could interpret *Broussard* more broadly (as it did) as holding "that information that would identify a child victim should not be publicly disclosed under § 3509(d)."  Doc. 62, at 18:16-17.  But citing the legislative history as Mr. Francisco did was an appropriate defense argument.  It is one thing to say an argument is weak or a quotation is taken out of context and reject it; it is entirely another to conclude that it was improper and amounted to misconduct.  His error was citing the wrong case and placing quotation marks where they should not have been.  Given the context, the evidence does not show the errors were intentional nor done in bad faith.

Nor does the reply brief and errata lend support for the sanctions order's conclusion that Mr. Francisco's errors were intentional or in bad faith. The reply brief, doc 37, at 8 n.3, which was submitted while Mr. Francisco was at a conference in Atlanta, was inartfully written, presumably by failing to recognize the seriousness of including an erroneous case and quotation in this initial motion.  It would have been more direct and appropriate to say that *Harris* does not exist and to correct the inaccurate quotation.  But the reply brief does acknowledge that it cited the wrong case (*Harris*) and directs the court to the correct case.  Similarly, the errata acknowledged counsel's errors and provided the court with corrections to the motion to fix the *Harris* citation and erroneous quote.  Doc. 47.  Although the court found the reply brief and errata's apologies and conclusion to be "inadequate," doc. 62, neither lend support to the sanction order's conclusion that the erroneous citation and quote in the initial brief was done intentionally or in bad faith.  To the contrary, they show that Mr. Francisco did not view the error

to be serious one because it was an accidental error rather than a deliberate misrepresentation. He knew what he had meant to say, and he knew that he had said it.

Likewise, the sanction order gives short shrift to Mr. Francisco's apologies and acknowledgment of his errors. As noted in the procedural section above, Mr. Francisco apologized repeatedly at the December 9 hearing, R.T. 5:11-13 ("I sincerely apologize for the lack of lack of attention to those citations"),R.T. 6:25-7:1 ("I do apologize for the citation error, Your Honor, the misquote."), R.T. 9:1-2 ("Defense counsel sincerely apologizes for the confusion and the poor attempt at remedying the issue, Your Honor."), in the errata, doc 47, at 2:3-8 ("Counsel apologizes to the Court . . . ."), and in his response to the order to show cause. Doc. 51 ("I deeply regret my citation and quotation errors and the resulting confusion they have caused. I likewise regret the time this matter has taken from the Court's attention and resources. I take full responsibility for the oversights and recognize the gravity of my mistakes."). Counsel's response to the OSC was submitted under penalty of perjury. Doc. 51. In the response, counsel takes "full responsibility" for his errors, but insists that the *Harris* citation error "was an inadvertent drafting error" that he cannot explain. Doc. 51, at 3.[10] The sanction

---

[10]    Although Mr. Francisco stated he did not use artificial intelligence or Chat GPT, it is worth noting that A.I. has become so persuasive that a person could use it without knowing it. Both Google and Microsoft now integrate A.I. into their search engines by default, influencing results and generating responses alongside traditional search listings. Westlaw also features its own A.I. powered tool called CoCounsel. https://legal.thomsonreuters.com/en/c/westlaw/westlaw-precision-generative-ai?searchid=TRPPCSOL/Google/LegalUS_RS_Westlaw_Main_Search_Brand-All_US/AI&chl=ppc&cid=4989046&sfdccampaignid=701PA00000HnC4jYAF&ef_id=CjwKC AiAh6y9BhBREiwApBLHCxZSjbMjThLgrP1lc-0dN_QlnzOlz_V4H4mE5YOHJQNamvwUaQIK7RoCr-UQAvD_BwE:G:s&s_kwcid=AL!7944!3!681703130762!e!!g!!westlaw%20ai&gad_source=1& gbraid=0AAAAADtqfRf2pI1VFZAZBGp45eTmof42v&gclid=CjwKCAiAh6y9BhBREiwApBL HCxZSjbMjThLgrP1lc-0dN_QlnzOlz_V4H4mE5YOHJQNamvwUaQIK7RoCr-UQAvD_BwE It also has something "Legal Generative AI." Even Microsoft Word now has an A.I. drafting feature known as Copilot. Lexis has Lexis A.I. For better or worse, A.I. tools are now a regular presence in all professions, including the legal one.

order does not provide evidence to support its conclusion that the errors were in fact intentional, in bad faith, or done for an improper purpose.

### C.    The Sanctions Are Excessive and Unfair.

"[N]ormally there is much to be said for deploying the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes." *United States v. Kouri-Perez*, 187 F.3d 1, 8 (1st Cir. 1999). "In this day and age, sanctions are a badge of reprobation that can haunt an attorney throughout his or her career. They can have ramifications that go far beyond the particular case." *In re Plaza-Martinez*, 747 F.3d at 14.

"It is inappropriate for courts to attempt to use [inherent powers] to justify an extreme remedy when, short of such heroic measures, the means are at hand to construct a satisfactory anodyne more narrowly tailored to the objective." *United States v. Horn*, 29 F.3d 754, 760 (1st Cir. 1994). In the related context of misconduct by the prosecutor, courts have recognized that it is inappropriate to use the Court's supervisory power to redress misconduct that did not result in harm to the defendant. *See United States v. Santana*, 6 F.3d 1, 10 (1st Cir. 1993) (discussing cases). The government was in no manner harmed by Mr. Francisco's citations. It's case against defendant Hayes was in no manner affected by litigation over sealing of a non-substantive pretrial motion. In these circumstances, the Court should have considered lesser sanctions, such as an oral reprimand or warning. Indeed, the embarrassment of having a significant drafting error publicly identified is itself a significant deterrent.

The sanctions order has had a life-changing, never-to-be-forgotten effect on Mr. Francisco, far worse than the $1,500 fine and mandatory reporting of the order to the State Bar Association, sanctions with which Mr. Francisco timely complied.. Mr. Francisco is a U.S. Army combat veteran who has practiced law for six years, almost exclusively in the public interest. This is the only time he has been sanctioned by a court. On January 31, 2025, the Federal Defender's Office served him with a "Notice of Adverse Action – Written Reprimand and Termination" based on the pleadings and court order in this case. The sanctions order may effectively kill his career for mistakenly citing a single wrong case and erroneously attributing

language as a quote instead of citing the correct case and properly noting its quoted legislative history.

### IV. Conclusion

It is worth noting that at the hearing on the motion to unseal, the Court, while criticizing Mr. Francisco for making arguments he sincerely believed were supported by law, the Court said, "I want to make clear that the Court and court staff, we make mistakes and that is inevitable because we are human." R.T. 26:14-15. The Court then went on to criticize Mr. Francisco once again: "Those types of inflammatory arguments and accusations, those are the types of things that undermine the integrity of our system." R.T. 27:1-3. There was nothing inflammatory about Mr. Francisco's argument, however, which rested on the requirement that a document be sealed only by court order after the formal request of a party. After only six months practicing in the district, he may not have appreciated that asking the Clerk to informally restrict access to a document may be a practice beneficial to both sides in a criminal case, rather than one to be criticized. Nonetheless, Mr. Francisco was acting to protect what he understood to be the integrity of the system as required by the local rules.

Mr. Francisco is also human. He made regrettable mistakes that were not done for any strategic advantage and repeatedly apologized for them. Undersigned counsel were both Assistant Federal Defenders before going into private practice and know the time pressures busy advocates face in researching and drafting briefs under tight deadlines. We respectfully ask that the Court vacate its sanctions order and its bad faith finding, and discharge its order to show cause.

Respectfully Submitted,


Dated: February 12, 2025          */s/ Tim Zindel*
                                  TIMOTHY ZINDEL


Dated: February 12, 2025          */s/ John Balazs*
                                  JOHN BALAZS
                                  Attorneys for Andrew Francisco