ERIC GRANT
United States Attorney
CHARLES CAMPBELL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   v.<br><br>DARAGH FINBAR HAYES,<br><br>       Defendant. | CASE NO.  2:24-CR-00280-DC<br><br>UNITED STATES' SENTENCING MEMORANDUM & REPLY TO THE DEFENDANT'S FORMAL OBJECTIONS<br><br>DATE: May 22, 2026<br>TIME: 9:30 a.m.<br>COURT: Hon. Dena M. Coggins |

## I.  **INTRODUCTION**

Defendant Daragh Finbar Hayes hid multiple cameras in a bathroom for the purpose of filming a child—CV1—while the child undressed, bathed, and used the toilet.  Hayes spent months creating those recordings, editing them to capture the most graphic scenes, and writing stories in which he fantasized about raping children who matched CV1's description.  Hayes then visited online forums to brag about the sexual pleasure he derived from this abuse, and to share images of CV1 with others.

The United States asks this Court to sentence Hayes to 55 years (660 months) of incarceration to provide just punishment, account for the heinous nature of the conduct, and protect the public from Hayes' future crimes.  The government otherwise joins the probation office's sentencing recommendation.

//

//

## II.    <u>FACTS</u>

Hayes's conduct came to the attention of law enforcement when an undercover FBI agent (UC) infiltrated a group conversation devoted to pedophilia on the messaging application Kik. *PSR* ¶ 6. The UC observed that a user later identified as Hayes was a participant in the group, and the UC initiated a private conversation. *PSR* ¶ 6. During the resulting conversation, Hayes stated that he was sexually attracted to children between 10 and 14 years old and bragged about his access to a 12-year-old child: CV1. *PSR* ¶ 7. Hayes explained that he had spent months hiding cameras inside a bathroom that CV1 used, and that those cameras had recorded CV1 bathing, urinating, and defecating. *PSR* ¶ 7.

Hayes made it clear that creating and viewing these images brought him sexual pleasure. *PSR* ¶ 7. Hayes told the UC that he masturbated multiple times a week while looking at the images, sometimes masturbating into CV1's underwear. *PSR* ¶ 7. Hayes stated that he fantasized about raping CV1 and watching CV1 be raped by other men. *PSR* ¶ 7. Finally, Hayes shared images of CV1 with the UC, including screenshots of hidden-camera videos which depicted CV1's exposed genitals. *PSR* ¶ 9.

Agents then arrested Hayes and searched his phone, laptop, and three hidden cameras disguised as writing pens and a USB phone charger. *PSR* ¶ 10. Agents found dozens of images and photos of CV1, many of which appeared to have been created by the cameras that Hayes had hidden in the bathroom that CV1 used. *PSR* ¶¶ 58–59. Agents learned that Hayes had distributed an image of CV1's genitalia to another individual beside the UC. *PSR* ¶ 12. During this search, agents also discovered text files with written stories in which an adult man repeatedly raped multiple children and then prostituted the children out to be raped by others.

## III.    <u>RESPONSE TO DEFENDANT'S FORMAL OBJECTIONS TO PSR</u>

Hayes raises three formal objections to the PSR's guideline calculations, specifically objecting to the application of enhancements under USSG §§2G2.1(b)(1) & (5), and 4B1.5(b)(1). *See Formal Obj.*, Dkt. No. 128, at 1-3. The Court should overrule these objections and apply the enhancements.

### A.    <u>The Court Should Apply the 2G2.1(b)(1) & (5) Enhancements.</u>

Hayes's challenges to the Specific Offense Characteristics enhancements under § 2G2.1(b)(1) and § 2G2.1(b)(5) can be grouped together. Subsection (b)(1) applies a two-level enhancement if the victim has "attained the age of twelve years but not attained the age of sixteen years." USSG

§ 2G2.1(b)(1).  Subsection (b)(5) applies a two-level enhancement if the defendant had a specific relationship of trust with the victim.[1]  USSG § 2G2.1(b)(1).  Hayes's does not contest the factual applicability of either subsection, instead arguing that they are "arbitrary and unsupported."  *See Formal Obj.*, at 1-2.

These arguments appear to constitute a challenge under the Due Process Clause, but that challenge fails.  Due process of law "requires only that a sentencing scheme be rational and not based on [an] arbitrary distinction.  *United States v. Garner*, 490 F.3d 739, 743 (9th Cir. 2007) (internal quotation marks omitted).  Accordingly, to overturn such a scheme, Hayes bears the burden of showing that "Congress acted irrationally when it directed the enhancements," or that "changed circumstances have so drastically altered the application of the enhancements" so as "to make them irrational today."  *United States v. Sharma*, 119 F.4th 1141, 1144 (9th Cir. 2024) (internal quotation marks omitted).

### 1.    The Victim-Age Enhancement of § 2G2.1(b)(1) Is Rational.

Hayes argues that Congress enacted the victim-age enhancement out of a concern that CSAM offenses were not generating sufficient sentences for offenders.[2]  *See Formal Obj.*, at 2 (citing *The History of The Child Pornography Guidelines*, U.S. Sentencing Comm., 14 (Oct. 2009)).  But while Hayes is correct about the source's argument, he is wrong about its target.  The source addresses "offenses sentenced under § 2G2.2, trafficking, receipt, and possession of child pornography."  *The History of The Child Pornography Guidelines*, U.S. Sentencing Comm., 11 (Oct. 2009).  And though the sources does note that these offenses have "had a high and increasing rate of downward departures and below-guideline variances," *id.*, it says nothing about whether a similar rationale applied to the enhancement of sentences imposed under § 2G2.1, for the production of CSAM.

The result is that Hayes hasn't carried his burden of showing that the victim-age enhancement is irrational or arbitrary.  Nor could he: it is rational to conclude that crimes committed against minor victims warrant stricter punishment.  Young victims are more vulnerable to exploitation, less able to defend themselves, and—given their earlier stages of mental and emotional development—more likely

---

[1] *See PSR*, ¶ 25; *Stipulation*, Dkt. No. 71, ¶ 12.

[2] The objection states that the images in this case "depict a naked child laying on a bed." *Formal Obj.*, at 1.  This is incorrect; the relevant images in this case depict CV1 in a bathroom.  *PSR*, ¶¶ 9–11.

to suffer serious, lifelong consequences due to sexual abuse.

### 2. The Relationship Enhancement of § 2G2.1(b)(5) is Rational.

This Court should also apply the relationship enhancement of § 2G2.1(b)(5). This subsection applies based on the existence of particular relationships of trust between the defendant and the victim. USSG § 2G2.1(b)(5). The application notes state that the provision "is intended to have broad application and includes offenses involving a minor entrusted to the defendant," including when defendants act as "teachers, day care providers, baby-sitters, or other temporary caretakers." USSG § 2G2.1, app. n. 5(A).

Hayes challenges this enhancement on the basis that it is overbroad. Hayes asserts that "there is virtually no situation in which child pornography could be produced where a defendant would not be eligible for this enhancement." But the language of the relevant Application Note makes it clear that this breadth is intentional. Courts assessing broad enhancements in similar contexts have found no due process issue. *See Sharma*, 119 F.4th at 1145 (two-level enhancement for use of a computer in receipt of CSAM applied in more than 95% of cases, but enhancement was still "rationally related to [a] legitimate interest.").

And, as with the victim-age enhancement, it is not difficult to conceive of a rational justification for writing the enhancement broadly. While all child sex abuse cases involve reprehensible conduct, the exploitation of a relationship of trust adds an element of betrayal warranting extra sanction. The notion that different types of relationships might fall under the same enhancement also does not create a due process issue. *See Chapman v. United States*, 500 U.S. 453, 467 (1991) ("That [defendants] of varying degrees of culpability might be subject to the same sentence does not mean that the penalty system… is unconstitutional.").

### B. The Court Should Apply the § 4B1.5(b)(1) Enhancement.

The guidelines impose a five-level increase when a defendant convicted of a covered sex crime "engages in a pattern of activity involving prohibited sexual conduct." USSG § 4B1.5(b)(1). Hayes does not contest that the other elements of § 4B1.5(b)(1) are satisfied, and only challenges whether his "exchanges with [CV1] constituted a 'pattern of activity.'" *Formal Obj.*, at 3.

The commentary to this subsection provides that a defendant "engaged in a pattern of activity

involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." USSG § 4B1.5, app. n. 4(B)(i). "An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion… occurred during the course of the instant offense; or… resulted in a conviction for the conduct that occurred on that occasion." *Id.* 4(B)(ii).

Hayes argues that his interactions with CV1 are "insufficient to establish a 'pattern' because they involve an exchange with a single goal." *Formal Obj.*, at 4. But the Ninth Circuit has already rejected that argument. In *Telles*, that court held that the sexual abuse of the same victim on two subsequent nights constituted "two separate occasions." *United States v. Telles*, 18 F.4th 290, 303 (9th Cir. 2021). The Ninth upheld the application of the § 4B1.5(b)(1) enhancement. *Id.*

The facts of the instant case are far less favorable to the defendant than those in *Telles*. Hayes spent months filming CV1, as opposed to the two sequential nights that the Ninth Circuit considered. The conduct in the other cases that Hayes cites likewise took place over the span of a few hours. *See, e.g.*, *Wooden v. United States*, 595 U.S. 360 (2022) (10 burglaries in one night were a single criminal episode). Hayes's actions represents a pattern of abusive behavior, and this Court should apply the 4B1.5(b)(1) enhancement.[3]

### IV.    SENTENCING RECOMMENDATION

A sentence of 660 months, 55 years, is necessary to punish Hayes for his egregious criminal conduct, protect the public from his future crimes, and deter any other would-be child predators. Under 18 U.S.C. § 3553(a), when imposing a sentence, a court should consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of a defendant; (3) the need for the sentence imposed to promote the goals of sentencing; (4) the kinds of sentences available; (5) the sentencing guideline range;[4] (6) any pertinent policy statement issued by the Sentencing Commission;

---

[3] Hayes also argues that the Court should vary downward from the guideline sentence because the 4B1.5(b)(1) enhancement "is not the product of careful consideration by the Sentencing Commission, but was rather promulgated and later amended by Congress itself." This argument is unsupported. *See Chapman*, 500 U.S. at 467 ("Congress has the power to define criminal punishments.").

[4] The PSR correctly calculates the guideline ranges as life. *PSR*, ¶ 98. Because the guideline range exceeds the statutory maximum sentence of any of the counts of conviction, the guideline range becomes the statutory maximum sentence on all counts, with those sentences run consecutively. *See*

(7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense.

### A.    The Nature and Circumstances of the Offense

The heinous conduct in this case warrants a 55-year sentence.  Hayes preyed upon a defenseless victim and used CV1's exploitation to satisfy his own depraved sexual fantasies.  He hid cameras in a bathroom for the specific purpose of capturing CV1 when CV1 thought that they were safe.  CV1 was 12 and defenseless; the defendant was 43 and eager to take advantage of CV1's innocence.  That conduct is made even worse because Hayes exploited a relationship of trust between himself and CV1.[5]

Next, Hayes went to great lengths to hide his predatory behavior from CV1 while still capturing sexualized images of her in her most vulnerable and exposed states, showing a level of thought and sophistication that warrants a lengthy sentence. The evidence found on Hayes's electronic devices shows his efforts to shape CV1's abuse into a format that he could enjoy.  He took screenshots of portions of the videos which clearly depicted CV1's body.  He edited those images, adjusting the lighting so that he could get a better view of the child's genitals and anus.  And, when a video or photo was particularly gratifying, he saved that photo as a "favorite" in one of his hidden folders and bragged to an undercover about how he repeatedly pleasured himself to those saved photos.  *PSR*, ¶ 11, n. 3.

Though Hayes did not physically violate CV1, his conversations and written stories make it clear that he fantasized about it.  He wrote detailed, extensive stories in which he described his fantasy of filming himself raping children and prostituting those children out to be raped by others.  He sought out online forums for pedophiles and bragged about the ways that he abused CV1, glorifying in the ways he broke and abused CV1's trust.  Those conversations confirm that, as extensive as his exploitation of CV1 was, he wanted to push things even further.

And, by sharing photos of CV1 online, he allowed others to join and perpetuate his abuse and exploitation of CV1.  This act is one of unique cruelty, as it all but ensures that photographs of CV1 at CV1's most vulnerable will circulate among pedophiles for years to come.  Had Hayes kept those

U.S.S.G. ¶ 5G1.2(d).

[5] *See PSR*, ¶ 25; *Stipulation*, Dkt. No. 71, ¶ 12.

images confined to his own hard drive, then CV1's victimization—as awful as it was—would have ended with his arrest. But the online distribution of child pornography is a crime with no real end. By sharing those images with others who shared his depraved fantasies, Hayes exposed CV1 to a lifetime of harm, anxiety, and trauma.

Finally, it must be emphasized that Hayes's conduct was not isolated incident. Time and time again Hayes chose to hurt CV1 for his own gain and then brag to other pedophiles about the myriad opportunities he had to exploit and abuse the trust that CV1 placed in him. Since being arrested and charged, the defendant has expressed contrition. *See PSR*, ¶ 16–18. But the conduct in this case lasted for months. If, as the defendant claims, he understood that what he was doing was wrong, then he had ample opportunity to stop. If, as he now admits, his conduct was disgusting and abusive and betrayed those who gave him their trust and respect, *see PSR*, ¶ 18, he had every opportunity to change his course. But he didn't. A sentence of 55 years in prison is necessary to adequately punish Hayes for this horrific conduct and the lifelong harm that he has caused.

### B.    Defendant's History and Characteristics

No circumstances in Hayes's life mitigate his culpability. He is not a victim of abuse. He had a good childhood. He had stable jobs. He had the support of a loving family. Hayes had access to more resources and opportunities for treatment than most, and that makes him all the more responsible for the depravity of his actions.

For the past few years, Hayes lived in a spacious home with his wife and daughters, and he enjoyed a close relationship with multiple members of his family. *PSR* ¶¶ 72, 74. He had more than a decade of stable employment at technology companies that paid him six-figure salaries. *PSR* ¶¶ 88–90. Hayes reported to the probation officer that he enjoys reading history books and watching documentaries, collecting Legos, and playing sports. *PSR* ¶ 76. Hayes also reports that, while he grew up in income-based housing in Ireland, his upbringing was loving and supportive. *PSR* ¶ 73. He does not report being abused by his parents or suffering from substance abuse issues. *PSR* ¶¶ 72–73.

These facts suggest that Hayes had ample time, familial support, and fiscal resources that he could have used to find ways to battle his sexual interest in children, including financing treatment to combat his proclivities. They also do not demonstrate the type of hardship and cyclical abuse that so

GOVERNMENT'S SENTENCING MEMORANDUM    7    UNITED STATES V. HAYES

often present themselves in cases of this type.  In short, Hayes had every opportunity to avoid this outcome.  Instead, he chose to exploit the trust that was placed in him, and to ignore opportunities to change.  A 55-year prison sentence reflects this history and the characteristics it reveals.

### C.    Need to Deter Criminal Conduct and Protect the Public

Hayes had everything he needed and more, yet he still made the choice time and time again to exploit and abuse CV1, and to share that abuse with other pedophiles.  The requested prison sentence in this case is sufficient but not greater than necessary to deter him and others from engaging in this conduct in the future.  The sentence in this case must constitute a loud and clear warning to potential sexual offenders that severe consequences will result from such atrocious acts.  Indeed, "the deterrence objective of sentencing is 'particularly compelling in the child pornography context.'"  *United States v. Irey*, 612 F.3d 1160, 1211 (11th Cir. 2010) (citation omitted).  "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'"  *Id.* (citation omitted); *accord United States v. Garthus*, 652 F.3d 715, 721-22 (7th Cir. 2011); *Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.").

Distressingly, as the Sentencing Commission has recognized, the market for child pornography has continued to grow, and to become more depraved.  *See, e.g.*, U.S. Sent'g Comm'n Hr'g on the Child Pornography Guidelines 1-2 (Feb. 15, 2012) (statement of James M. Fottrell, Steve DeBrota & Francey Hakes, Dep't of Justice), available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-andmeetings/20120215/Testimony_15_Hakes_DeBrota_Fottrell.pdf.  The need for effective deterrence through a severe sentence is therefore essential.

This is especially true where, as here, an offender went to lengths to hide his criminal conduct from his family and victim, all while bragging about his ability to get away with such conduct in online chatrooms.  A 55-year sentence is necessary to deter the defendant from engaging in this dangerous and harmful conduct in the future.  It will also provide the maximum protection of the public, since the defendant will no longer be able to sexually exploit children while he is in custody.

## V.    Fine, JVTA, and AVAA Assessments

As noted, Hayes has spent years working well-paying jobs in the tech sector. As a result, he is not indigent, and so is subject to the mandatory assessments imposed by the JVTA and AVAA. *See PSR*, ¶¶ 107–108.

A total assessment of $20,000 applies under the JVTA. That statute provides that, in addition to the assessment imposed under 18 U.S.C. § 3013, courts "shall assess an amount of $5,000 on any non-indigent person… convicted of an offense under… chapter 110." 18 U.S.C. § 3014(a). The crimes of which Hayes is convicted are part of chapter 110. Imposing a $5,000 assessment for each of the four counts of conviction is thus appropriate, which results in a total assessment of $20,000.

An assessment of $12,000 under the AVAA is also appropriate. The AVAA provides that, in addition to any other assessments, courts "shall assess not more than $50,000 on any person convicted of a child pornography production offense." 18 U.S.C. § 2259A(a)(3). Further, courts "shall assess not more than $35,000 on any person convicted of any other offense for trafficking in child pornography." *Id.* § 2259A(a)(2). The Act defines the term "child pornography production" *inter alia* as conduct proscribed by 18 U.S.C. § 2251(a), including defendant's charge under Counts 3, 4, and 5. 18 U.S.C. § 2259(c)(1). "Trafficking in child pornography" is defined as *inter alia* conduct proscribed by 18 U.S.C. § 2252, including defendant's charge under Count Six. 18 U.S.C. § 2259(c)(3).

In determining the amount to be assessed under the AVAA, courts should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and the guidance in 18 U.S.C. § 3572 for the imposition of fines. 18 U.S.C. § 2259A(c). The § 3553(a) factors are discussed above, and they warrant a strict sentence. However, given Hayes's likely limited earning potential during his incarceration, and given the requested $20,000 assessment under the JVTA, a $12,000 AVAA assessment is adequate but not excessive to achieve the statute's purposes. For similar reasons, the government does not request that Hayes be ordered to pay a fine.

//
//
//
//

## VI.     CONCLUSION

For the reasons outlined above, this Court should sentence Hayes to 55 years in prison.  This sentence would be sufficient but not greater than necessary to achieve the objectives listed in 18 U.S.C. § 3553(a).  The government joins all other aspects of the probation office's sentencing recommendation.

Dated:  May 1, 2026

ERIC GRANT
United States Attorney


By:  /s/ CHARLES CAMPBELL
CHARLES CAMPBELL
Assistant United States Attorney